# AGREEMENT
# BETWEEN THE GOVERNMENT OF THE RUSSIAN FEDERATION AND THE GOVERNMENT OF THE REPUBLIC OF LITHUANIA ON THE PROMOTION AND RECIPROCAL PROTECTION OF THE INVESTMENTS

The Government of the Russian Federation and the Government of the Republic of Lithuania, hereinafter referred to as the "Contracting Parties",

- desiring to establish favourable conditions for investments made by investors of one Contracting Party in the territory of the other Contracting Party,

- recognising that the promotion and reciprocal protection of investments, based on the present Agreement, will be conducive to the development of mutually beneficial trade and economic, scientific and technical co-operation,

have agreed as follows:

## Article 1
## Definitions

For the purposes of this Agreement:

1. The term "investor" in respect of each Contracting Party shall mean:

   a) any natural person who is a national of the state of this Contracting Party according to the legislation of this Contracting Party and authorised to invest in the territory of the other Contracting Party according to the legislation of the latter Contracting Party;

   b) in respect of the Russian Federation:

   any legal person, constituted or established according to the legislation in force in the territory of the Russian Federation provided this legal person is authorised according to the legislation of the Russian Federation to invest in the territory of the Republic of Lithuania; in respect of the Republic of Lithuania: any entity constituted and registered in the territory of the Republic of Lithuania in conformity with its legislation;

2. The term "investment" shall mean all kinds of assets, invested by an investor of one Contracting Party in the territory of the other Contracting Party in accordance with legislation of the latter Contracting Party, and shall include in particular, though not exclusively:

   a) movable and immovable property as well as respective property rights;

   b) shares, stocks, bonds and other forms of participation in the enterprises and companies;

   c) claims to money, invested to create economic value, and claims to any performance having an economic value and connected with investments;

d) exclusive rights to the objects of the intellectual property (copyrights, patents, industrial designs and models, trade marks, service marks, goodwill and know-how);

e) rights to conduct economic activities conferred by law or under contract, including, in particular, concessions to search for, cultivate, extract and exploit natural resources. Any change of form in which assets are invested or reinvested shall not affect their character as investment provided such change does not contradict the legislation of the Contracting Party in which territory the investments are made.

3. The term "returns" shall mean all amounts produced by an investment in accordance with paragraph 2 of this Article and in particular, though not exclusively, includes profits, capital gains, dividends, interest, licence remunerations, royalties and other fees.

4. The term "territory" shall mean the territory of the Russian Federation or the territory of the Republic of Lithuania, including their respective exclusive economic zone and continental shelf, in which the respective state may exercise sovereign rights and jurisdiction in accordance with international law.

5. The term "legislation of the Contracting Party" shall mean the laws and regulations of the state of the Contracting Party in respect of both Contracting Parties.

## Article 2
## Promotion and protection of investments

1. Each Contracting Party shall encourage investors of the other Contracting Party to make investments in its territory and shall admit such investments in accordance with its legislation.

2. Each Contracting Party in accordance with its legislation shall guarantee to the investors of the other Contracting Party full protection and security of the investments made by the investors of the other Contracting Party.

## Article 3
## Treatment of Investments

1. Each Contracting Party shall accord in its territory to the investors, investments made by investors of the other Contracting Party and activities related to such investments fair and equal treatment, which excludes the application of discriminatory measures impeding management, maintenance, use, enjoyment and disposal of the investment.

2. The treatment, set forth in the paragraph 1 of this Article, shall be at least no less favourable than the treatment accorded by the Contracting Party to the investments and activities related to such investments of its own investors or the investors of third state.

3. Each Contracting Party in accordance with its laws and regulations reserves a right to determine the branches of the national economy and the spheres of activities where the activities of foreign investors are restricted or limited.

4. The most favoured nation treatment, provided in accordance with paragraph 2 of this Article, is not extended to the benefits which are provided or will be provided in the future by the Contracting Party:

a) by virtue of any existing or future customs, monetary and payment union, free trade and common tariff areas, common market or other forms of regional economic integration agreements, to which the Contracting Party is a party or may become a party in the future;

b) on the basis of the treaties on the avoidance of double taxation or other agreements on taxation.

## Article 4
## Key personnel

1. The Contracting Party in accordance with its legislation regarding entry, temporary stay and work of natural persons non-citizens, shall permit natural persons, who are the investors of the other Contracting Party and key personnel (executives, managers as well as specialists, who are essential to the functioning of the enterprise), employed by the investor of this Contracting Party, to enter and remain in its territory for the purpose of engaging in activities, related to investments.

2. The Contracting Party, in accordance with its legislation, shall permit the investors of the other Contracting Party, who have made investments in the territory of the first Contracting Party, to employ any employee of the category of key personnel of their choice regardless of citizenship, provided this employee of the category of key personnel was granted permit to enter, temporary stay and work in the territory of the first Contracting Party, and this work meets the conditions and temporary limitations set forth in the permit issued to this employee of the category of key personnel.

## Article 5
## Transparency of legislation

Each Contracting Party shall, with a view to promoting the understanding of its legislation that pertain to or affect investments made in its territory by the investors of other Contracting Party, make such legislation public and accessible.

The Contracting Parties, if necessary, shall exchange information on the legislation, pertaining to the field of application of this Agreement.

## Article 6
## Expropriation and compensation

l. The investments of the investors of one Contracting Party made in the territory of the other Contracting Party shall not be subject to expropriation, nationalisation or other measures equivalent to expropriation or nationalisation (hereinafter referred to as "expropriation") unless these measures are carried out in the public interest and under due process of law, are carried out without discrimination and are accompanied by the payment of prompt, adequate and effective compensation.

2. The compensation shall be equivalent to the market value of the expropriated investments immediately before the expropriation in fact occurred or the impending expropriation became public knowledge. The compensation shall be paid without undue delay in a convertible

currency and shall be freely transferable from the territory of one Contracting Party to the territory of the other Contracting Party. The compensation shall include interest calculated until the date of payment of the compensation at the LIBOR rate.

## Article 7
### Compensation of losses

Investors of one Contracting Party, who suffer losses in respect of their investments in the territory of the other Contracting Party due to war, civil disturbance, a state of national emergency, insurrection, riot or other similar events, shall be accorded the treatment no less favourable than that accorded by the latter Contracting Party to its own investors or to investors of any third State in respect of any measures taken by it in accordance with such loss.

## Article 8
### Transfers of payments

1. Each Contracting Party shall guarantee to investors of the other Contracting Party, after the completion of all tax obligations, free transfer abroad of payments in connection with the investments, in particular:

    a) the initial capital and additional amounts for the maintenance or increase of the investment;

    b) returns;

    c) funds in repayment of loans, directly related to the investment;

    d) the proceeds from the total or partial liquidation or sale of the investments;

    e) compensation referred to in the Article 6 of this Agreement;

    f) the earnings and other remuneration of the investor of the other Contracting Party and key personnel authorised to work in connection with investments in the territory of the first Contracting Party.

2. Transfers shall be made without undue delay in a freely convertible currency at the exchange rate applying on the date of transfer in accordance with currency regulations in force of the Contracting Party in whose territory the investment was made.

## Article 9
### Subrogation

The Contracting Party or its designated Agency which made a payment to an investor under an indemnity against non-commercial risks given in, respect of an investment in the territory of the other Contracting Party, shall exercise by the virtue of subrogation the rights of the investor to the same extent as the investor. The rights are exercised in accordance with legislation of the latter Contracting Party.

## Article 10
### Settlement of Disputes between one Contracting Party and an Investor of the other Contracting Party

1. In a case of any dispute between one Contracting Party and the investor of the other Contracting Party concerning the investments, including the disputes regarding amount, conditions or procedure of payment of the compensation, and the procedure of transfers, referred to respectively in the Articles 6 and 8 of this Agreement, a written notification, which includes detailed explanation, is submitted by the investor to the
Contracting Party, which is a party of the dispute. The parties of the dispute shall endeavour to settle such dispute, if possible, by the way of negotiations.

2. If such dispute can not be settled amicably within six months from the date of the written notification referred to in paragraph 1 of this Article, the dispute, at the request of either party and at the choice of an investor, shall be submitted to:

> a) competent court or court of arbitration of the Contracting Party in which territory the investments are made;
>
> b) the Arbitration Institute of the Stockholm Chamber of Commerce;
>
> c) the Court of Arbitration of the International Chamber of Commerce;
>
> d) an ad hoc arbitration in accordance with Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL).

3. The arbitral decision shall be final and binding on both parties of the dispute. Each Contracting Party shall undertake to execute such decision in accordance with its legislation.

## Article 11
### Settlement of disputes between the Contracting Parties

1. The disputes between the Contracting Parties concerning the interpretation and application of this Agreement shall be settled by negotiations, if possible, through diplomatic channels.

2. If the dispute is not settled in such way within six months from the beginning of the negotiations, the dispute shall, upon the request of either Contracting Party, be submitted to an Arbitral Tribunal.

3. Such an Arbitral Tribunal shall be constituted for each case in the following way. Within two months from the date on which either Contracting Party receives a notification of arbitration each Contracting Party shall appoint one arbitrator. These two arbitrators, within two months period from the appointment of these arbitrators, shall select the national of the third state, who, upon approval of both Contracting Parties, shall be elected the Chairman of the Arbitral Tribunal.

4. If the necessary appointments were not made in the periods, referred to in the paragraph 3 of this Article, either Contracting Party may, in the absence of any other agreement, invite the President of the International Court of Justice to make such appointments. If the President of the International Court of Justice is a national of one of the Contracting Parties or is otherwise

unable to carry out the specified request, the Vice-President of the International Court of Justice shall be invited to make the necessary appointments. If the Vice-President of the International Court of Justice is a national of one of the Contracting Parties or is otherwise unable to carry out the specified request, the member of the International Court of Justice next in seniority who is not a national of either Contracting Party shall be invited to make the necessary appointments.

5. The Arbitral Tribunal shall reach its decision award by the majority of votes. Such decision award of the Arbitral Tribunal is final and binding upon each Contracting
Party. The Arbitral Tribunal shall determine the procedures of its work independently.

6. Each Contracting Party shall bear the costs connected with the activities the member of the Arbitral Tribunal, appointed by this Contracting Party, and of its representation in the arbitration proceedings; the cost of the Chairman of the Arbitral Tribunal and remaining costs shall be borne in equal parts by the Contracting Parties. The Arbitral Tribunal may, however, decide that a higher proportion of costs shall be borne by one of the two Contracting Parties, and such award shall be binding on both Contracting Parties.

## Article 12
## Consultations

The Contracting Parties shall consult at the, request of either of them on matters concerning the interpretation and application of this Agreement.

## Article 13
## Application of the Agreement

This Agreement shall apply to investments made in the territory of one Contracting Party by the investors of the other Contracting Party as from January 1, 1992.

The provisions of this Agreement shall apply to the disputes, referred to in the Articles 10 and 11 of this Agreement, from the date of its entry into force.

## Article 14
## Entry into force and Duration of the Agreement

1. Each Contracting Party shall notify the other Contracting Party in a written form that all internal procedures for the entry into force of this Agreement have been fulfilled. The Agreement shall enter into force from the date of the latter of the two notifications.

2. The Agreement shall remain in force for the period of fifteen years. It shall continue to be in force thereafter until the expiration of twelve months from the date on which, either Contracting Party shall have given the other Contracting Party written notice concerning the termination of this Agreement.

3. The Protocol, annexed hereto, shall form an integral part of the Agreement.

4. This Agreement may be amended by the mutual written consent of the both Contracting Parties. Any such amendment shall enter into force when each Contracting Party have notified

the other Contracting Party that all internal procedures for the entry into force of such amendment have been fulfilled.

5. The provisions of the other Articles of this Agreement shall continue to be effective for a further period of ten-years from the date of its termination in respect of investments made before the termination of and covered by this Agreement.

Done in duplicate in Moscow on the 29th of June, 1999, in the Russian, Lithuanian and English languages, all texts being equally authentic. In case of divergence, the English text shall be operative.

      For the Government of                                 For the Government of
      the Russian Federation                                the Republic of Lithuania

## PROTOCOL

At the signing of the Agreement between the Government of the Russian Federation and the Government of the Republic of Lithuania on the promotion and reciprocal protection of investments (hereinafter referred to as "the Agreement"), the Contracting Parties have agreed upon the following provisions, that shall form the integral part of the Agreement:

l. Notwithstanding the provisions of the Article 10 of the Agreement, the investors, whose investments are being expropriated, shall have a right to prompt review of their case by the appropriate judicial or administrative authorities of the expropriating Contracting Party to determine whether such expropriation, and any compensation therefore, conforms to the principles set forth in the Article 6 of the Agreement and the legislation of the expropriating Contracting Party.

2. Notwithstanding the provisions of the Article 13 of the Agreement, in respect of the Republic of Lithuania:

    a) the provisions of the Agreement shall not apply to the matters relating to acquisition, possession, use, disposal and other rights to land plots;

    b) the matters referred to in subparagraph a) of the paragraph 2 of this Protocol shall be regulated by the legislation of the Republic of Lithuania.

Done in duplicate in Moscow on the 29th of June 1999, in the Russian, Lithuanian and English languages, all texts being equally authentic. In case of divergence, the English text shall be operative.

                          For the Government of the Russian Federation

                          For the Government of the Republic of Lithuania