# EXHIBIT B

Alston & Bird LLP

*Translated by the Bank of Lithuania*

*Consolidated version from 01-08-2018*

*Law published in: Official Gazette, No* 99-1957*1994, ID code 0941010ISTA000I-678*

***Recast with effect from 30-03-2001:***
*No* IX-205*, 13-03-2001, Official Gazette, 2001, No 28-890 (30-03-2001)*

# REPUBLIC OF LITHUANIA
# LAW
# ON THE BANK OF LITHUANIA

1 December 1994 No I-678
Vilnius

# CHAPTER 1
# GENERAL PROVISIONS

## Article 1. The Bank of Lithuania
1. The central bank of the Republic of Lithuania shall be the Bank of Lithuania, belonging by the right of ownership to the State of Lithuania. The Bank of Lithuania shall form an integral part of the European System of Central Banks and shall pursue the objectives and carry out the tasks of the European System of Central Banks in accordance with the guidelines and instructions of the European Central Bank. The Bank of Lithuania shall perform its functions and carry out its activities to the extent that it does not interfere with the objectives of the European Central Bank and of the European System of Central Banks and complies with the legal acts of the European Union, including the legal acts of the European Central Bank. The regulation of the activities of the Bank of Lithuania has been harmonised with the legal acts of the European Union specified in Annex 3 to this Law.
*Amendments to the paragraph of the Article:*
*No* XII-2058*, 24-11-2015, published in the RLA, 02-12-2015, ID code 2015-19169*

2. The ownership of the State of Lithuania in the Bank of Lithuania shall be expressed by the capital of the Bank of Lithuania. The assets of the Bank of Lithuania shall belong to it by the right of ownership. The Bank of Lithuania shall manage, use and dispose of, its assets in accordance with legal acts of the European Union and this Law.
3. The Bank of Lithuania shall be established by the Seimas.
*Amendments to the Article:*
*No* IX-1998*, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No* X-569*, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No* XII-765*, 23-01-2014, published in the RLA 30-01-2014, ID code 2014-00713*
*No* XII-764*, 23-01-2014, published in the RLA 30-01-2014, ID code 2014-00716*

## Article 2. Legal Status of the Bank of Lithuania
1. The Bank of Lithuania shall be a legal person.
2. The Bank of Lithuania shall have a seal bearing the State Emblem of Lithuania and words 'Bank of Lithuania' ('Bank of Lithuania').
3. *Repealed with effect from 15-06-2018*
*Repeal of the paragraph of the Article:*
*No* XIII-1231*, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

4. The State of Lithuania shall not be liable for the obligations of the Bank of Lithuania, and the Bank of Lithuania shall not be liable for the obligations of the State of Lithuania.

**Article 3. Independence of the Bank of Lithuania**

1. The Bank of Lithuania shall be governed by the Treaty on the Functioning of the European Union, the Protocol on the Statute of the European System of Central Banks and of the European Central Bank annexed to the Treaty on the Functioning of the European Union, as well as other legal acts of the European Union. The Bank of Lithuania shall be also governed by laws and other legal acts of the Republic of Lithuania in as much as they are in compliance with the Treaty on the Functioning of the European Union and the Protocol on the Statute of the European System of Central Banks and of the European Central Bank annexed to the Treaty on the Functioning of the European Union. In the event of a conflict between the legal acts of the Republic of Lithuania and the international treaties of the Republic of Lithuania, the international treaties of the Republic of Lithuania shall take precedence.

2. When implementing the objectives and performing its functions as well as pursuing the activities necessary for that, neither the Bank of Lithuania, nor the Chairperson of the Board of the Bank of Lithuania, the Deputy Chairpersons, the Members of the Board, nor other members of the staff of the Bank of Lithuania (hereinafter: 'the Bank of Lithuania staff') must seek and take instructions from the institutions and bodies of the European Union, the governments of the Member States of the European Union or any other institutions or bodies. The Government of the Republic of Lithuania and State institutions must respect the independence of the Bank of Lithuania and must not seek to influence the Bank of Lithuania and its staff in discharge of their duties.

*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*

**Article 4. Branches, Representative Offices, Institutions and Enterprises of the Bank of Lithuania**

The Bank of Lithuania shall have the right to establish branches, representative offices, institutions and enterprises, to be a shareholder or stakeholder in other institutions and enterprises in the Republic of Lithuania and foreign states, provided this is needed to carry out its functions.

**Article 5. Foreign Relations of the Bank of Lithuania and its Representation of the State of Lithuania**

1. The Bank of Lithuania shall maintain relations with foreign and international financial institutions and shall conclude agreements with them.

2. The Bank of Lithuania may represent the State of Lithuania in international financial institutions.

**Article 6. Issue of Banknotes and Coins**

1. The Bank of Lithuania shall have the right to issue banknotes and coins in compliance with the requirements of the Treaty on the Functioning of the European Union.

2. The Bank of Lithuania is hereby designated as the National Analysis Centre (NAC) and the Coin National Analysis Centre (CNAC) in the Republic of Lithuania.

3. The Bank of Lithuania shall supervise how cash handlers – the institutions referred to in Article 6(1) of Regulation (EC) No 1338/2011 (hereinafter – cash handlers) fulfil the requirements established by Regulation (EU) No 1210/2010 and Decision ECB/2010/14 for cash handling activities – checking euro banknotes and coins for authenticity and fitness and their recirculation (hereinafter – cash handling activities).

*Amendments to the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1667, 17-11-2011, Official Gazette, 2011, No 145-6813 (01-12-2011)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*

**Article 7. The Primary Objective of the Bank of Lithuania**

1. In accordance with the Treaty on the Functioning of the European Union, the primary objective of the Bank of Lithuania shall be to maintain price stability.

2. Without prejudice to its primary objective, the Bank of Lithuania shall, within the range of its competence, support the general economic policies in the European Union with a view to contributing to the achievement of the objectives of the European Union established in the Treaty on the Functioning of the European Union, and support the economic policy carried out by the Government of the Republic of Lithuania, without prejudice to the primary objective of the Bank of Lithuania and to the extent this meets the objectives of the European Central Bank and of the European System of Central Banks.

*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1667, 17-11-2011, Official Gazette, 2011, No 145-6813 (01-12-2011)*


**Article 8. Functions and activities of the Bank of Lithuania**

1. In implementing the provisions of the Treaty on the Functioning of the European Union and acting as an integral part of the European System of Central Banks, the Bank of Lithuania shall perform the following functions:

1) issue banknotes and perform other related activities;

2) implement monetary policy;

3) manage, use and dispose of the official foreign reserves of the Bank of Lithuania (hereinafter: 'foreign reserves');

4) encourage stable and efficient operation of payment and securities settlement systems, including the development of payment systems managed by the Bank of Lithuania and other information systems constituting the infrastructure of payments;

*Amendments to the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*


5) collect statistical information necessary for the performance of the tasks of the European System of Central Banks from state and municipal institutions and economic entities.

2. In addition, the Bank of Lithuania shall:

1) act as a state treasury agent according to the agreement with the Ministry of Finance of the Republic of Lithuania (hereinafter: 'the Ministry of Finance');

2) exercise financial market supervision, except in cases where in accordance with the provisions of Council Regulation (EU) No 1024/2013 of 15 October 2013 conferring specific tasks on the European Central Bank concerning policies relating to the prudential supervision of credit institutions (OJ 2013 L 287, p. 63) (hereinafter: 'Regulation (EU) No 1024/2013') the abovementioned functions are performed by the European Central Bank, as well as carry out the functions assigned to national supervisory authorities under Regulation (EU) No 1024/2013;

*Amendments to the paragraph of the Article:*
*No XII-1691, 14-05-2015, published in the RLA 20-05-2015, ID code 2015-07667*


3) settle disputes between the consumers and financial market participants out of court;

4) collect statistical information necessary for the performance of the functions of the Bank of Lithuania that are not related to the activities of the European System of Central Banks from state and municipal institutions and economic entities, set the procedures for the collection, compilation and dissemination of the said statistical information, and compile the balance of payments and international investment and financial accounts of the Republic of Lithuania;

5) may grant loans, secured by adequate collateral for the Bank of Lithuania, to credit institutions registered in the Republic of Lithuania in accordance with the procedure, conditions and terms established by the Bank of Lithuania, without prejudice to the requirements derived from its

participation in the European System of Central Banks and notably those resulting from operations on behalf of public entities;

6) issue coins in compliance with the requirements of the Treaty on the Functioning of the European Union and perform other related activities;

7) implements a policy that aims to contribute to the protection of the stability of the entire financial system, including strengthening the resilience of the financial system and the reduction of systemic risks in order to ensure sustainable financial sector's contribution to economic growth (hereinafter – macro-prudential policy);

8) perform the functions assigned by laws of the Republic of Lithuania to the financial sector resolution authority, except in cases where such functions are performed by the Single Resolution Board in accordance with the provisions of Regulation (EU) No 806/2014 of the European Parliament and of the Council of 15 July 2014 establishing uniform rules and a uniform procedure for the resolution of credit institutions and certain investment firms in the framework of a Single Resolution Mechanism and a Single Resolution Fund and amending Regulation (EU) No 1093/2010 (OJ 2014 L 225, p. 1) (hereinafter: 'Regulation (EU) No 806/2014'); it shall also perform the functions assigned to a national resolution authority in accordance with Regulation (EU) No 806/2014.

*Supplemented with the paragraph of the Article:*
*No XII-2058, 24-11-2015, published in the RLA 02-12-2015, ID code 2015-19169*

3. The Bank of Lithuania shall carry out activities necessary for the implementation of the functions referred to in paragraph 1 and 2 of this Article and for the development and maintenance of the infrastructure necessary for that purpose. For services provided by the Bank of Lithuania, other than the services for which no fee may be charges under Article 15(5) of the Law of the Republic of Lithuania on Public Administration, the Bank of Lithuania shall have the right to receive the fee fixed by resolution of the Board of the Bank of Lithuania, unless legal acts of the European Union establish otherwise.

*Amendments to the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

4. In carrying out its functions, and pursuing its activities, the Bank of Lithuania shall participate in maintaining stability and soundness of the entire financial system and, within its remit, shall take all the necessary measures.

*Amendments to the Article:*
*No IX-1598, 05-06-2003, Official Gazette, 2003, No 61-2755 (27-06-2003)*
*No IX-2069, 23-03-2004, Official Gazette, 2004, No 54-1830 (15-04-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-556, 10-12-2009, Official Gazette, 2009, No 153-6894 (28-12-2009)*
*No XI-1667, 17-11-2011, Official Gazette, 2011, No 145-6813 (01-12-2011)*
*No XII-1046, 17-07-2014, published in the RLA, 01-08-2014, ID code 2014-10742*
*No XI-557, 10-12-2009, Official Gazette, 2009, No 153-6895 (28-12-2009)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*

**Article 9. Legal Acts of the Bank of Lithuania**
Within their competence, the Board of the Bank of Lithuania shall adopt resolutions, and the Chairperson of the Board of the Bank of Lithuania shall issue orders.

**CHAPTER 2**
**ORGANISATION AND MANAGEMENT OF**
**THE ACTIVITIES OF THE BANK OF LITHUANIA**

**Article 10. The Board of the Bank of Lithuania**
1. The Bank of Lithuania shall be governed by the Board of the Bank of Lithuania. The Board shall be comprised of a Chairperson, two Deputy Chairpersons, and two Members of the Board.

2. Only citizens of the Republic of Lithuania may be the Chairperson, Deputy Chairpersons, and Members of the Board of the Bank of Lithuania, provided they have not reached the age of 65 by the date of their appointment.

3. The Chairperson, Deputy Chairpersons and Members of the Board of the Bank of Lithuania may participate in the management of international financial institutions of which the Republic of Lithuania or the Bank of Lithuania is a member.

4. The Chairperson of the Board of the Bank of Lithuania shall be appointed for a term of five years and dismissed prior to the expiration of his or her term of office by the Seimas on the recommendation of the President of the Republic.

5. Deputy Chairpersons and Members of the Board of the Bank of Lithuania shall be appointed for a term of six years and dismissed prior to the expiration of their term of office by the President of the Republic on the recommendation of the Chairperson of the Board of the Bank of Lithuania.

*NB. Paragraph 5 shall apply to Deputy Chairpersons and Members of the Board of the Bank of Lithuania appointed after the entry into force of Law No XI-1319.*

6. The Chairperson of the Board of the Bank of Lithuania may be appointed to his position for unlimited number of terms of office. The Deputy Chairpersons and Members of the Board may be appointed to their respective positions for no more than two consecutive terms.

7. The amount of salaries of Deputy Chairpersons and Members of the Board of the Bank of Lithuania, without exceeding 90 per cent of the amount of the salary of the Chairperson of the Board of the Bank of Lithuania, shall be established by the Board of the Bank of Lithuania.

*NB. Paragraph 7 shall apply to Deputy Chairpersons and Members of the Board of the Bank of Lithuania appointed after the entry into force of Law No XI-1319.*

*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No XI-1319, 14-04-2011, Official Gazette, 2011, No 46-2158 (16-04-2011)*

**Article 11. Functions and Activities of the Board of the Bank of Lithuania**

1. The Board of the Bank of Lithuania shall:

1) *Repealed with effect from 01-01-2015*;
2) *Repealed with effect from 01-01-2015*;
3) *Repealed with effect from 01-01-2015*;

4) establish the principles and procedures for the management, use and disposal of foreign reserves that in accordance with the procedure laid down by legal acts of the European Union have not been transferred to the European Central Bank, in compliance with the requirements of the European Central Bank applicable to foreign reserves of the national central banks;

5) *Repealed with effect from 01-01-2015*;

6) develop a financial market supervision policy, expect in cases where in accordance with the provisions of Regulation (EU) No 1024/2013 this is carried out by the European Central Bank;

*Amendments to the paragraph of the Article:*
*No XII-1691, 14-05-2015, published in the RLA, 20-05-2015, ID code 2015-07667*

7) adopt resolutions;

8) upon the consent of the European Central Bank, decide on issues concerning the participation of the Bank of Lithuania in international monetary institutions;

9) decide on matters of issue and withdrawal of the banknotes and coins and other issues related thereto in compliance with the requirements of the Treaty on the Functioning of the European Union;

10) establish branches, representative offices, enterprises and institutions of the Bank of Lithuania for carrying out its functions and decide on the acquisition of shares of (stakes in) enterprises and institutions related to the functions of the Bank of Lithuania;

11) approve the structure of the Bank of Lithuania;

12) establish the principles of service (work) and the status of the staff of the Bank of Lithuania; approve the rules of procedure of the Board;

13) apply to the financial market participants defined in Article 42(1) (hereinafter – financial market participants under supervision) and other persons the enforcement measures established by laws and legal acts of the European Union as well as the mandatory instructions, obligations and other mandatory measures established by financial market legislation, except in cases where in accordance with the provisions of Regulation (EU) No 1024/2013 this is carried out by the European Central Bank;

*Amendments to the paragraph of the Article:*
*No XII-1691, 14-05-2015, published in the RLA, 20-05-2015, ID code 2015-07667*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

14) in accordance with the provisions of the Law on Financial Sustainability decide on financial sector resolution, appeal to the court regarding initiation of bankruptcy proceedings against financial market participants under supervision;

*Amendments to the paragraph of the Article:*
*No XII-2058, 24-11-2015, published in the RLA, 02-12-2015, ID code 2015-19169*

15) approve the Bank of Lithuania budget;

16) in compliance with the requirements of the legal acts of the European Central Bank, establish the financial accounting policy of the Bank of Lithuania, approve a set of annual financial statements and the allocation of profit for the financial year, as established in Paragraph 3 of Article 23 of this Law;

17) establish procedures for the management, use and disposal of the assets of the Bank of Lithuania, following the main principle of achieving the objectives and carrying out the tasks of the European System of Central Banks using the most economical, effective and productive means, and establish procurement procedures;

18) resolve issues pertaining to the issuance of licenses, permits, consents, approvals, non-objections established by laws regulating the financial market as well as suspension of their validity, cancelation of suspension of their validity and revocation (termination of their validity);

19) take decisions as regards the disputes between the consumers and the financial market participants; and

20) establish measures of macro-prudential policy;

*Supplemented with the paragraph of the Article:*
*No XII-1097, 18-09-2014, published in the RLA, 23-09-2014, ID code 2014-12712*

21) take decisions on the development of payment systems managed by the Bank of Lithuania and other information systems constituting the infrastructure of payments and on the implementation of related measures;

*Supplemented with the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA 14-06-2018, ID code 2018-09837*

22) approve the operating rules of payment systems managed by the Bank of Lithuania and other information systems constituting the infrastructure of payments, the rules for opening and managing of their participants' accounts with the Bank of Lithuania, establish the procedure for the provision of and payment for services of the payment systems managed by the Bank of Lithuania and other information systems constituting the infrastructure of payments;

*Supplemented with the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

23) perform other activities related to the implementation of the primary objective of the Bank of Lithuania.
*No XII-1097, 18-09-2014, published in the RLA, 23-09-2014, ID code 2014-12712*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

2. The Board may authorise the Chairperson of the Board of the Bank of Lithuania to carry out a part of its functions, except for the functions provided for by points 4, 6, 7, 9, 10, 12, 13, 14, 15, 16, 18, 19, 20, 21 and 22 of paragraph 1 of this Article.
*Amendments to the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

3. The Board of the Bank of Lithuania may authorise the structural units of the Bank of Lithuania to carry out all functions, or a part thereof, provided for by subparagraphs 13, 18 and 19 of paragraph 1 of this Article, or in observance of provisions of Article $17^1$ of this Law – collegiate bodies formed by the Board of the Bank of Lithuania, if laws do not provide otherwise.
*Amendments to the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No IX-2069, 23-03-2004, Official Gazette, 2004, No 54-1830 (15-04-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1320, 14-04-2011, Official Gazette, 2011, No 46-2159 (16-04-2011)*
*No XI-1667, 17-11-2011, Official Gazette, 2011, No 145-6813 (01-12-2011)*
*No XII-1046, 17-07-2014, published in the RLA, 01-08-2014, ID code 2014-10742*
*No XI-202, 19-03-2009, Official Gazette, 2009, No 38-1441 (04-04-2009)*
*No XI-557, 10-12-2009, Official Gazette, 2009, No 153-6895 (28-12-2009)*
*No XI-1319, 14-04-2011, Official Gazette, 2011, No 46-2158 (16-04-2011)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*

**Article 12. Dismissal of the Members of the Board of the Bank of Lithuania**
1. The Chairperson of the Board of the Bank of Lithuania, Deputy Chairpersons and Members thereof shall be dismissed prior to the expiration of their term of office only if they do not fulfil the conditions required for the performance of their duties or they have been found guilty of serious misconduct.
2. A decision regarding the dismissal of the Chairperson of the Board of the Bank of Lithuania on the grounds provided for in Paragraph 1 of this Article shall be made by the Seimas of the Republic of Lithuania on the recommendation of the President of the Republic; a decision regarding the dismissal of Deputy Chairpersons and Members of the Board shall be made by the President of the Republic on the recommendation of the Chairperson of the Board of the Bank of Lithuania.
3. A decision regarding a dismissal shall be adopted within one month from the date of submission of the recommendation thereon to the Seimas of the Republic of Lithuania or the President of the Republic. In the event a decision is not adopted within the above time limit, the person in question shall continue to perform his or her duties.
4. The Chairperson of the Board of the Bank of Lithuania shall have the right to refer to the Court of Justice of the European Union a decision regarding his dismissal prior to the expiration of his term of office within two months from the announcement of the decision or from the receipt of the notification thereof or, if the above has not occurred, from the date when the decision became known to the plaintiff on the grounds that the decision was in breach of the Treaty on the Functioning of the European Union or any other legal provision related to the application of the above Treaty. The Deputy Chairpersons and the Members of the Board of the Bank of Lithuania shall have the right to appeal to Vilnius Regional Court against a decision regarding a dismissal prior to the expiration of their terms of office.
*Amendments to the Article:*

*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*

**Article 13. Resignation of the Members of the Board of the Bank of Lithuania**
1. The Chairperson of the Board of the Bank of Lithuania may resign from his or her post upon submitting a resignation request to the President of the Republic of Lithuania; Deputy Chairpersons and Members of the Board may resign upon submitting resignation requests to the Chairperson of the Board.
2. The resignation request submitted by the Chairperson of the Board shall be considered by the Seimas and requests of Deputy Chairpersons and Members of the Board shall be considered by the President of the Republic.
3. A decision regarding the resignation shall be adopted within one month from the date of receipt of a resignation request.
4. In the event a decision is not adopted during the time period indicated in Paragraph 3 of this Article, the Chairperson of the Board, Deputy Chairpersons and Members of the Board shall be considered to have resigned after one month from the day of filing such request.
5. In the event a decision to decline a request is adopted, the Chairperson of the Board, Deputy Chairpersons and Members of the Board shall be regarded to have resigned after one month from the date of the adoption of the above decision if they submit a request confirming their previous request within two weeks after the adoption of the decision to decline the request.

**Article 14. Meetings of the Board of the Bank of Lithuania**
1. Meetings of the Board of the Bank of Lithuania shall be held as necessary, but at least once a month. Procedures for the arrangement of Board meetings shall be established by the rules of procedure of the Board of the Bank of Lithuania.
2. Meetings of the Board of the Bank of Lithuania shall be considered valid if at least three members of the Board are present. Decisions of the Board shall be adopted by a majority of at least three votes.
3. Meetings of the Board of the Bank of Lithuania shall be presided over by the Chairperson of the Board or by one of the Deputy Chairpersons in accordance with the procedure established by the rules of procedure of the Board.
4. Decisions of the Board of the Bank of Lithuania shall be implemented by resolutions thereof, or by orders of the Chairperson of the Board.
*Amendments to the Article:*

*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 15. Voting Right Restriction for the Members of the Board of the Bank of Lithuania**
Where an issue considered during a meeting of the Board is related to the private interests of a Member of the Board, involving the conflict between public and private interests, the Member of the Board concerned shall, prior to the discussion of the above issue, present a written notice thereon and shall not have the right to participate in the discussion of the said issue and in the adoption of a decision thereon.

**Article 16. Work Restriction to the Members of the Board of the Bank of Lithuania**
1. The Chairperson, Deputy Chairpersons and Members of the Board of the Bank of Lithuania may only be employed at the Bank of Lithuania and may not engage in any other activities that would cause a conflict of private and public interests. The Board of the Bank of Lithuania may give them consent to engage in research and pedagogical activities.
2. The Chairperson, Deputy Chairpersons, and Members of the Board of the Bank of Lithuania must, during the first year after their duties have ceased, avoid any conflict of private and public interests that would be caused by their new activities. When intending to engage in the activities

that the above-mentioned persons consider might cause a conflict of private and public interests, they shall inform in writing the Board of the Bank of Lithuania and shall seek its opinion before committing themselves.

3. Upon the expiration of the term of office, the Chairperson, Deputy Chairpersons, and Members of the Board of the Bank of Lithuania shall be paid a severance pay. The pay shall amount to the number of the average monthly salaries, paid to them, corresponding to the years of their uninterrupted term of office at the Bank of Lithuania, but shall not exceed five average monthly salaries. The severance pay shall not be paid if they have stopped performing their duties because they have been found guilty of serious misconduct.

*NB. Paragraph 3 shall apply to the Chairperson of the Board of the Bank of Lithuania who commences his term of office on the date of entry into force of Law No XI-1319 and afterwards and to Deputy Chairpersons and Members of the Board of the Bank of Lithuania appointed after the entry into force of this Law.*
*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No XI-1319, 14-04-2011, Official Gazette, 2011, No 46-2158 (16-04-2011)*


**Article 17. Chairperson of the Board of the Bank of Lithuania**

1. The Chairperson of the Board of the Bank of Lithuania shall:
1) organise the work of the Bank of Lithuania;
2) represent the Bank of Lithuania in the Republic of Lithuania and abroad without any special power of attorney;
3) conclude employment contracts with staff members and heads of the branches, representative offices, institutions and enterprises of the Bank of Lithuania, provide incentives for distinguished employees and impose disciplinary penalties;
4) approve the distribution of duties between the Chairperson, Deputy Chairpersons and Members of the Board;
5) issue powers of attorney;
6) approve regulations of the structural divisions of the Bank of Lithuania; and
7) perform other functions delegated by the Board of the Bank of Lithuania.

2. In the event of the absence of the Chairperson of the Board of the Bank of Lithuania, his or her duties shall be performed by one of the Deputy Chairpersons or one of the Members of the Board on a mandate from the Chairperson of the Board of the Bank of Lithuania.

3. The Chairperson of the Board of the Bank of Lithuania, his or her deputy or a Member of the Board shall have the right to attend sittings of the Government of the Republic of Lithuania in a deliberative capacity.

4. The salary of the Chairperson of the Board of the Bank shall be equal to five average monthly salaries of the employees of monetary intermediation institutions announced by the Department of Statistics to the Government of the Republic of Lithuania.

*NB. Paragraph 4 shall apply to the Chairperson of the Board of the Bank of Lithuania who commences his term of office on the date of entry into force of Law No XI-1319 and afterwards.*

5. In order to finance expenses related to the representation both in Lithuania and abroad, every month the Chairperson of the Board of the Bank of Lithuania shall be granted a sum accounting for 15 percent of his or her salary without justifying expenses.

*NB. Paragraph 4 shall apply to the Chairperson of the Board of the Bank of Lithuania who commences his term of office on the date of entry into force of Law No XI-1319 and afterwards.*
*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No XI-1118, 12-11-2010, Official Gazette, 2010, No 139-7102 (27-11-2010)*
*No XI-1319, 14-04-2011, Official Gazette, 2011, No 46-2158 (16-04-2011)*


**Article 17¹. Collegiate Bodies Formed by the Board of the Bank of Lithuania**

1. Collegiate bodies of the Bank of Lithuania which by virtue of provisions of Article 11(3) of this Law may be authorised to perform the functions of the Board of the Bank of Lithuania shall be formed, their composition and rules of procedure specifying the functions and procedure of work organisation of such collegiate bodies shall be approved by the Board of the Bank of Lithuania.

2. Only employees of the Bank of Lithuania may be appointed the members of the  collegiate bodies formed by the Board of the Bank of Lithuania who will be authorised to perform the functions referred to in Article 11(1)(13) and (18) of this Law.

3. In addition to the employees of the Bank of Lithuania, other representatives delegated by public authorities, organisations uniting financial market participants under supervision specified by the Board of the Bank of Lithuania who meet the requirements of Article $22^3$ of the Law of the Republic of Lithuania on Consumer Protection (hereinafter collectively all these persons – delegated members) may be appointed the members of collegiate bodies formed by the Board of the Bank of Lithuania who will be authorised to perform the functions referred to in Article 11(1)(19) of this Law. The number of delegated members may not exceed one third of the composition of members of the collegiate body. Delegated members *mutatis mutandis* shall be subject to the provisions of Articles $18^1$ and 19 of this Law.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

### Article 18. Staff of the Bank of Lithuania

1. The staff of the Bank of Lithuania shall perform the functions of the Bank of Lithuania laid down in this Law by implementing resolutions of the Board of the Bank of Lithuania and orders of the Chairperson, and by observing the regulations of a relevant structural division and employment contracts.

2. Laws regulating labour relations shall be applicable to the staff of the Bank of Lithuania.

3. The staff of the Bank of Lithuania may only be employed at the Bank of Lithuania. Upon the consent of the Board of the Bank of Lithuania, they may also be employed elsewhere.

4. The Board of the Bank of Lithuania shall have the right to delegate a staff member for temporary work at the European Union and international institutions and bodies or institutions or bodies of another state at the request of the staff member and at its own initiative, subject to the consent of such staff member, without cancelling the employment contract and suspending the counting of the period of employment at the Bank of Lithuania, without changing the terms of remuneration set in the employment contract or by changing said terms by mutual agreement between the parties of the employment contract. At the request of the staff member and subject to the consent of the Board of the Bank of Lithuania, such staff member may take up employment for a certain period of time at the institutions and bodies mentioned herein by requesting for a leave of absence, without suspending the counting of the period of employment at the Bank of Lithuania.

5. The staff of the Bank of Lithuania may be granted financial services pursuant to the procedure and terms established by the Board of the Bank of Lithuania.

6. The Bank of Lithuania shall disclose information concerning a staff member only in the cases and pursuant to the procedure provided for by law.

*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*

### Article $18^1$. Requirements for the Avoidance of a Conflict of Public and Private Interests Applicable to the Staff of the Bank of Lithuania

1. The Staff of the Bank of Lithuania must avoid engaging in the activities that would cause a conflict of public and private interests

2. The Board of the Bank of Lithuania, in ensuring the lawful interests of the Bank of Lithuania and in order to ascertain that the staff of the Bank of Lithuania avoid a conflict of public and private interests and do not use or allow the use by third parties of the information constituting a state, official and bank secret in their own or the third parties' interests, may establish the kinds of information on personal and family financial operations to be disclosed by the Bank of Lithuania

staff to the Bank of Lithuania, and may establish restrictions on entering into certain financial transactions or engaging in certain activities.
*The Law supplemented with the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*

## Article 19. Responsibility in Protecting Secrets

1. The staff of the Bank of Lithuania as well as other persons, who have been granted the right of access to the information constituting state, official and bank secrets or who have come into possession of such information without such a right, shall protect the information constituting state, official and bank secrets. This obligation shall continue to exist after the end of an employment relationship with the Bank of Lithuania or after the end of any other service or function related to the Bank of Lithuania.

2. A secret of the Bank shall be any non-public information related to the European System of Central Banks and any other information used in the activities of the Bank of Lithuania that does not constitute a state or official secret with respect to its significance, the illegal disclosure or loss of which could nevertheless have negative consequences on the functioning of the Bank of Lithuania and its activities, and could harm legitimate interests of other persons.

3. The Chairperson of the Board of the Bank of Lithuania shall approve detailed lists of information constituting state and official secrets. Detailed lists of information constituting state and official secrets shall be approved and amended in accordance with the procedure laid down by the Republic of Lithuania Law on State and Official Secrets.

4. Usage procedures in relation to information constituting a bank secret shall be approved by the Chairperson of the Board of the Bank of Lithuania.

5. Protection of information constituting a bank secret in court proceedings shall be subject to the provisions of the laws of the Republic of Lithuania ensuring protection of commercial secrets.
*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

## CHAPTER 3
## FINANCES OF THE BANK OF LITHUANIA
*Amendment to the title of the Chapter:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*

## Article 20. Capital of the Bank of Lithuania

1. The capital of the Bank of Lithuania shall be comprised of its authorised capital and reserve capital.

2. The authorised capital shall be EUR 60 million. It shall be accumulated from the funds of the State of Lithuania and/or profit of the Bank of Lithuania.

3. The reserve capital shall be accumulated from the profit of the Bank of Lithuania.
*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

## Article 21. Budget of the Bank of Lithuania

The Bank of Lithuania shall plan its annual budget taking into account the needs related to the implementation of the objectives and functions, as well as its activities prescribed by this Law. The budget shall consist of operating expenses and investment in tangible and intangible assets.
*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*

## Article 21[1]. Financing of Activities of a Financial Market Supervision and Financial Sector Resolution Authority

1. Financial market supervision shall be financed by contributions of financial market participants and by funds of the Bank of Lithuania. Activities of a financial sector resolution authority shall be financed by contributions of financial market participants.

2. Financial market participants who must pay contributions to cover financial market supervision expenditure, contribution base and maximum contributions shall be set out in Annex 1 of this Law. Financial market participants who must pay contributions to cover expenditure of the financial sector resolution authority, contribution base and maximum contributions shall be set out in Annex 2 of this Law. Annual contribution rates shall be set by the Bank of Lithuania. Rates of contributions for financial market supervision shall be set by the Bank of Lithuania after consultation with the financial market participants under supervision. When setting contribution rates, account must be taken of the functions performed by the Bank of Lithuania and its incurred expenses related to the relevant financial market participants as well as of the scope and form of activities of the said financial market participants, and in the case of financial market participants under supervision – the risk taken by them. Financial market participants who engage in the activity of more than one financial market participant referred to in Annex 1 or 2 to this Law must pay contributions to cover financial market supervision expenditure or contributions to cover expenditure of the financial sector resolution authority for each activity carried out by them, except where a license or business authorisation issued by the supervisory authority entitles the financial market participant to engage in the activity of more than one financial market participant referred to in Annex 1 or 2 to this Law or where the activity of a financial market participant referred to in Annex 1 or 2 to this Law pursued by the financial market participant is already reflected in the base of contributions paid by it. The detailed calculation method of contributions of financial market participants under supervision and the procedure of payment thereof as well as the procedure of payment of contributions to finance activities of the resolution authority shall be laid down by legal acts of the Bank of Lithuania.

*Amendments to the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*


3. If in a given year the sum of paid contributions of financial market participants exceeds the expenditure incurred by the Bank of Lithuania that year, where such expenditure is related to financial market supervision or the functions of the financial sector resolution authority, the Bank of Lithuania shall correspondingly reduce the sum of contributions planned for the following year by the said amount and the sum of contributions paid in excess shall be used to finance next-year financial market supervision or activities of the financial sector resolution authority.

4. If in a given year the sum of contributions paid by financial market participants is insufficient to cover the expenses of the Bank of Lithuania related to the functions of the financial sector resolution authority, the Bank of Lithuania may temporarily cover the shortfalls with other funds of the Bank of Lithuania, however, it must increase by an appropriate amount the contributions planned for coming years to finance activities of the financial sector resolution authority (without exceeding maximum annual contributions set in Annex 2 to this Law) with the purpose of recovering the used funds of the Bank of Lithuania.

5. Financial market participants referred to in Annexes 1 and 2 to this Law must transfer contributions for the current year to the accounts specified by the Bank of Lithuania by 31 May of that year at the latest. Where the amount of financial market supervision contributions calculated for a financial market participant is smaller than EUR 50, the financial market participant shall be exempted from payment of the contribution. Financial market participants must pay the following default interest for the missed deadline for contribution payment: 0.05 per cent of the outstanding amount for each day. Payment of default interest shall not afford exemption from the obligation to pay the whole delayed amount.

*Amendments to the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA 14-06-2018, ID code 2018-09837*

6. Unpaid contributions and default interest shall be, by a decision taken by the Bank of Lithuania, be subject to uncontested recovery (without debiting the person's account on his order) from the financial market participant's cash accounts with the Bank of Lithuania, credit or payment institutions. Unpaid contributions and default interest may, by a decision taken by the Bank of Lithuania, be recovered from other assets of the financial market participant. In this case, the enforcement shall be carried out by bailiffs in accordance with the procedure laid down by the Republic of Lithuania Code of Civil Procedure.

*Supplemented with the Article:*
*No XII-2058, 24-11-2015, published in the RLA, 02-12-2015, ID code 2015-19169*

### Article 22. Profit (Loss) of the Bank of Lithuania
The profit (loss) of the Bank of Lithuania for the financial year shall be calculated by deducting expenses from income.

### Article 23. Coverage of the Loss and Allocation of the Profit of the Bank of Lithuania
1. After the set of financial statements of the last ended financial year is approved in accordance with the procedure laid down by this Law, profit (loss) for that year and undistributed profit carried over from the previous financial periods shall be attributed to the net distributable profit (loss). Thereafter the net distributable profit shall be distributed or the net distributable loss shall be covered following the provisions established in this Article.
2. Net distributable loss shall be covered from the reserve capital of the Bank of Lithuania. When reserve capital is not sufficient to cover distributable loss, remaining uncovered losses are carried forward to be covered by the distributable profit of the succeeding financial years.
3. Net distributable profit shall be allocated in the following sequence:
1) to cover the uncovered loss carried forward;
2) from the excess remaining after the allocation under the subparagraph 1 herein, an amount shall be allocated to authorised capital up to the amount specified in Article 20 of this Law;
3) from the excess remaining after the allocation under the subparagraph 2 herein, an amount shall be allocated to reserve capital up to the amount, independently established by the decision of the Board of the Bank of Lithuania taking into account potential impact of risks however this capital shall be no less than five amounts of the authorised capital of the Bank of Lithuania;
4) from the excess remaining after the allocation under the subparagraph 3 herein, an amount shall be allocated to the State Budget as the profit contribution of the Bank of Lithuania. This contribution shall not exceed the amount corresponding to 70 per cent of the calculated average of the profit (loss) of the Bank of Lithuania of the last three financial years.
4. The surplus of the distributable profit after the allocation established in observance of paragraph 3 of this Article shall be carried forward as undistributed profit and shall be distributed following the provisions established in this Article in succeeding financial years.

*Amendments to the Article:*
*No IX-1352, 04-03-2003, Official Gazette, 2003, No 27-1079 (19-03-2003)*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No XI-510, 02-12-2009, Official Gazette, 2009, No 147-6553 (12-12-2009)*
*No XI-1800, 15-12-2011, Official Gazette, 2011, No 160-7567 (28-12-2011)*

### Article 24. Relation of the Bank of Lithuania to the State Budget
The contribution of the Bank of Lithuania shall be paid to the state budget once a year not later than by 1 May of the following year.

*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*

## CHAPTER 4
## MONETARY POLICY

### Article 25. Opening of Accounts and Instruments of Monetary Policy

1. The Bank of Lithuania, acting as an integral part of the European System of Central Banks, shall implement the defined monetary policy.

2. In order to conduct operations, the Bank of Lithuania may open accounts for credit institutions, public entities and other market participants and accept assets, including book entry securities, as collateral.

3. In accordance with general principles for open market and credit operations established by the European Central Bank, including the announcement of conditions under which it stands ready to enter into such transactions, the Bank of Lithuania may:

1) operate in the financial markets by buying and selling outright (spot and forward) or under repurchase agreement and by lending or borrowing claims and marketable instruments, whether in EU or in non-EU currencies, as well as precious metals;

2) conduct credit operations with credit institutions and other market participants, with lending being based on adequate collateral.

*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 26.** *Repealed with effect from 01-01-2015*
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1667, 17-11-2011, Official Gazette, 2011, No 145-6813 (01-12-2011)*

**Article 27.** *Repealed with effect from 01-01-2015*
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 28.** *Repealed with effect from 01-01-2015*
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 29.** *Repealed with effect from 01-01-2015*
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 30.** *Repealed with effect from 01-01-2015*
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 31. Setting and Publication of Exchange Rates Between the Euro and Foreign Currencies**

1. The Bank of Lithuania shall publish in the Republic of Lithuania reference exchange rates between the euro and foreign currencies as published by the European Central Bank.

2. The Bank of Lithuania may also set and publish in the Republic of Lithuania other reference exchange rates between the euro and foreign currencies that were not indicated in Paragraph 1 of this Article.

*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 32.** *Repealed with effect from 01-01-2015*
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1667, 17-11-2011, Official Gazette, 2011, No 145-6813 (01-12-2011)*

**CHAPTER 5**
**FOREIGN RESERVES AND OPERATIONS**

**Article 33. Foreign Reserves**
The Bank of Lithuania shall manage, use and dispose of foreign reserves following the principles and procedure meeting the requirements of European Union law.
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 34. The Structure of Foreign Reserves**
Foreign reserves may be composed of:
1) gold;
2) foreign currency in banknotes and coins;
3) assets in foreign currency held abroad;
4) Special Drawing Rights (SDRs) and reserves in the International Monetary Fund; and
5) other universally recognised international reserves.

**Article 35. Operations of the Bank of Lithuania**
1. In performance of its functions, the Bank of Lithuania shall have the right to conduct the following operations:
1) open accounts on its own behalf and put deposits thereon;
2) open and manage accounts and accept deposits;
3) take and grant loans;
4) purchase and sell gold and assets in foreign currency;
5) carry out other operations.
2. Foreign reserves of foreign central banks held in accounts opened by the Bank of Lithuania may not be subject to recovery (in a judicial or extrajudicial manner).
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1320, 14-04-2011, Official Gazette, 2011, No 46-2159 (16-04-2011)*
*No XI-1319, 14-04-2011, Official Gazette, 2011, No 46-2158 (16-04-2011)*

**Article 36. Settlement Agreements**
The Bank of Lithuania may enter into settlement agreements with foreign public and/or private institutions.
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

## CHAPTER 6
## FUNCTIONS OF A STATE TREASURY AGENT

**Article 37.** *Repealed with effect from 01-01-2015*
*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 38. Opening of Accounts for State Treasury**
The Bank of Lithuania shall have the right to open and manage the accounts of the State Treasury of the Republic of Lithuania.
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 39. Operations with Government Securities**
 On the basis of an agreement with the Ministry of Finance, the Bank of Lithuania may organise the issue and redemption of Government securities and the payment of interest thereon.

**Article 40. Administration of the National Debt**

On the basis of an agreement with the Ministry of Finance, the Bank of Lithuania may administer the national debt.

### Article 41. Consulting the Government

The Bank of Lithuania may consult and give proposals to the Government on the issues related to financial markets, including its regulation, and State Treasury policy.

*Amendments to the Article:*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*

# CHAPTER 7
## FINANCIAL MARKET SUPERVISION

*Amendment to the title of the Chapter:*
*No XI-557, 10-12-2009, Official Gazette, 2009, No 153-6895 (28-12-2009)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*

### Article 42. Aim, Functions, Rights and Obligations of the Bank of Lithuania in Performance of the Financial Market Supervision

1.      Financial market participants under supervision shall be: banks, foreign bank branches established in the Republic of Lithuania, central credit unions, credit unions, insurance companies, reinsurance companies, branches of foreign insurance and reinsurance companies established in the Republic of Lithuania, insurance broker companies and branches of foreign insurance and reinsurance intermediaries established in the Republic of Lithuania, electronic money institutions, intermediaries of electronic money institutions and branches of foreign electronic money institutions established in the Republic of Lithuania, financial brokerage firms, tied intermediaries of financial brokerage firm, financial advisor firms, regulated market operators, transaction information service providers, benchmark index administrators, data providers under supervision, management companies, investment companies, central securities depositories, branches of foreign central securities depositories established in the Republic of Lithuania, depositories, foreign financial brokerage firms and branches of management companies established in the Republic of Lithuania, pension associations, investment holding companies and issuers, payment institutions and agents of payment institutions, consumer creditors, consumer credit intermediaries, creditors, peer-to-peer lending platform operators and credit intermediaries, crowdfunding platform operators, national development institutions and operators of currency exchange offices.

2.      In supervision of how the financial market participants comply with the requirements set in legal acts regulating the financial market, the Bank of Lithuania shall:

1)      perform the supervision of banks, branches of foreign banks established in the Republic of Lithuania, central credit unions, credit unions and fulfil other functions assigned to the Bank of Lithuania by the Law of the Republic of Lithuania on Banks, the Law of the Republic of Lithuania on the Central Credit Unions and the Law of the Republic of Lithuania on Credit Unions;

2)      perform the supervision of insurance companies, reinsurance companies, branches of foreign insurance and reinsurance companies established in the Republic of Lithuania, insurance brokerage firms and branches of foreign insurance and reinsurance intermediaries established in the Republic of Lithuania and fulfil other functions assigned to the Bank of Lithuania by the Law on Insurance;

3)      perform the supervision of e-money institutions, intermediaries of e-money institutions and branches of foreign e-money institutions established in the Republic of Lithuania and fulfil other functions assigned to the Bank of Lithuania by the laws regulating the activities of these entities;

4)      perform the supervision of financial brokerage firms, tied intermediaries of a financial brokerage firm,  financial advisor firms, operators of regulated markets, transaction information service providers, benchmark index administrators, data providers under supervision,  management companies, investment companies, central securities depositories, branches of foreign central securities depositories established in the Republic of Lithuania, depositories, branches of foreign financial brokerage firms and management companies established in the Republic of Lithuania, pension associations, investment holding companies and issuers and fulfil other functions assigned

to the Bank of Lithuania by the Law of the Republic of Lithuania on Markets in Financial Instruments, the Law of the Republic of Lithuania on Securities, the Law of the Republic of Lithuania on Collective Investment Undertakings, the Law of the Republic of Lithuania on Collective Investment Undertakings for Informed Investors, the Law of the Republic of Lithuania on Management Companies of Collective Investment Undertakings for Professional Investors, the Law of the Republic of Lithuania on Supplementary Voluntary Pension Accumulation, the Law of the Republic of Lithuania on Pension Accumulation, the Law of the Republic of Lithuania on Occupational Pension Accumulation, the Law of the Republic of Lithuania on Investment Holding Companies, and the Law of the Republic of Lithuania on the Pension System Reform;

5)      perform the supervision of payment institutions and intermediaries of payment institutions and fulfil other functions assigned to the Bank of Lithuania by the Law of the Republic of Lithuania on Payment Institutions;

6)      fulfil the functions assigned to the Bank of Lithuania by the Law of the Republic of Lithuania on Financial Institutions, the Law of the Republic of Lithuania on the Supplementary Supervision of Entities in a Financial Conglomerate, the Law of the Republic of Lithuania on the Prevention of Money Laundering and Terrorist Financing, the Law of the Republic of Lithuania on Payments and other laws;

7)      perform the supervision of consumer credit providers, consumer credit intermediaries and peer-to-peer lending platform operators and fulfil other functions assigned to the Bank of Lithuania by the Law of the Republic of Lithuania on Consumer Credit;

8)      perform the supervision of operators of the payment and securities settlement systems and fulfil other functions assigned to the Bank of Lithuania by the Law of the Republic of Lithuania on Settlement Finality in the Payment and Securities Settlement Systems;

9)      perform supervision of currency exchange offices' operators and other functions assigned to the Bank of Lithuania as provided for in the Law of the Republic of Lithuania on the Operators of Currency Exchange Offices;

10)      fulfil functions assigned to the competent authority by Regulation (EC) No 1060/2009 and Regulation (EU) No 1286/2014;

11) perform the supervision of crowdfunding platform operators and fulfil other functions assigned to the Bank of Lithuania by the Law of the Republic of Lithuania on Crowdfunding;

12) perform the supervision of creditors, peer-to-peer lending platform operators and credit intermediaries and fulfil other functions assigned to the Bank of Lithuania by the Law of the Republic of Lithuania on Credits Related to Immovable Property;

13) perform the supervision of national development institutions and fulfil other functions assigned to the Bank of Lithuania by the Law of the Republic of Lithuania on the National Development Institutions.

3. The Bank of Lithuania shall exercise financial market supervision insofar as this is not assigned to the European Central Bank in accordance with the provisions of Regulation (EU) No 1024/2013.

4. In performance of the financial market supervision, the Bank of Lithuania shall have the right to:

1) adopt legal acts and recommendations regarding the activities and supervision of the financial market participants under supervision;

2) receive free of charge the documents, their copies, other data and information necessary for the performance of the supervisory function from state institutions and registers, financial market participants under supervision, other natural and legal persons, and, if necessary, obtain additional information – invite such persons and receive explanations from them in accordance with the procedure set forth by this Law;

3) inspect (examine) financial market participants under supervision and where there are grounds to suspect violations of requirements established by legal acts regulating financial market or in other cases specified by laws regulating financial market – other persons as well;

4) in accordance with the procedure established by legal acts of the Bank of Lithuania, carry out test purchases of financial services or products. Information received during such purchases shall be

used for planning and undertaking actions to prevent possible infringements of legal acts regulating financial market; however, this may not serve as the grounds for application of sanctions;

5) notify financial market participants under supervision and other persons in writing about the violations and weaknesses of their activities that are not subject to the application of mandatory instructions or sanctions established by laws and suggest taking measures to eliminate the infringements, weaknesses, their causes and conditions;

6) in the cases and according to the procedure established by this Law and other laws regulating financial market, give mandatory instructions to financial market participants under supervision;

7) in the cases and according to the procedure established by regulating financial market and legal acts of the European Union apply sanctions to financial market participants under supervision and other persons;

8) apply to court for defending public interests protected by legal acts regulating financial market;

9) request from auditors of financial market participants under supervision the information on audit of such entities necessary for the performance of supervisory functions. The fulfilment of such request shall not be considered to constitute a breach of the prohibition to disclose confidential information and, accordingly, shall not have any negative consequences on the auditors;

10) make public the information necessary for the protection of consumers or public interests;

11) have other rights established by this law and legal acts referred to in paragraphs 2 and 3 of this Article, as well as other legal acts the supervision over compliance with which is attributed to the competence of the supervisory authority.

5. The Bank of Lithuania shall use the rights established in paragraph 3 of this Article:

1) directly;

2) in cooperation with other supervisory authorities, state and municipal institutions;

3) with the assistance of other persons to carry out certain actions;

4) with the assistance of law enforcement bodies.

6. Financial market supervision carried out by the Bank of Lithuania shall be based on the forward-looking and risk based approach. A forward-looking approach means that the aim is to identify potential risks as soon as possible and take measures to eliminate them. A risk based approach means that actions, in the first instance, are aimed at eliminating the cases of the greatest risk by linking the risk to the probability of occurrence of damage and the size and extent of such damage.

7. Where the Bank of Lithuania has the grounds to suspect any illegal offering to acquire or subscribe to financial instruments and/or to provide insurance or financial services in the Republic of Lithuania at a distance (by means of communications), i.e. without having the right granted in accordance with the procedure set forth by legal acts regulating financial market or violating otherwise the requirements of legal acts, the Bank of Lithuania shall have the right to:

1) give mandatory instructions to the information hosting service provider to immediately remove the information stored by the information hosting service provider which is used for the purpose of illegally offering to acquire or subscribe to financial services, provide insurance and/or financial services;

2) give mandatory instructions to the provider of network services to immediately remove the possibility to access the information which is used for the purpose of illegally offering to acquire or subscribe to financial services, provide insurance and/or financial services.

8. In order to carry out the actions referred to in paragraph 7 of this Article, the Bank of Lithuania must submit an application with Vilnius Regional Administrative Court for issuing a permit to carry out the actions. The application shall specify the forename and surname or name (if available) of the person who has committed the suspected infringement, the nature of suspected infringements of legal acts regulating financial market and the envisaged actions. The application shall be examined and the ruling shall be passed no later than within 3 (three) business days after the submission of the application. Where the Bank of Lithuania disagrees with the ruling of Vilnius Regional Administrative Court to reject the application, the Bank of Lithuania shall have the right to appeal against the ruling with the Supreme Administrative Court of Lithuania within 7 (seven) days. The Supreme Administrative Court of Lithuania shall examine the appeal against the ruling of Vilnius

Regional Administrative Court no later than within 7 (seven) days. Representatives of the Bank of Lithuania shall have the right to participate in the hearing of the appeal. The courts examining applications and appeals regarding the issue of the court's permission must ensure confidentiality of the submitted information and enisaged actions.

9. The Bank of Lithuania shall publish the information about the persons who illegally offer to acquire or subscribe to financial instruments and/or provide insurance or financial services in the Republic of Lithuania and shall inform that activities of such persons are carried out illegally.

10. The procedure of eliminating the possibilities to access the information which is used for the purpose of illegally offering to acquire or subscribe to financial instruments and/or provide insurance or financial services shall be established by the Bank of Lithuania.

11. The information which must be submitted to the Bank of Lithuania in observance of provisions of this Article and of Article 42$^1$ shall also include the information which constitutes the bank secret, commercial secret or is confidential for other reasons.

12. The Bank of Lithuania shall provide consultations on the competence of the supervision performed by the Bank of Lithuania and shall undertake other preventive actions established in the Law of the Republic of Lithuania on Public Administration and other legal acts to prevent the potential breaches of legal acts regulating financial market.

13. Upon establishing facts which prove the potential criminal activities, the Bank of Lithuania shall inform the responsible judicial authorities thereof.

*Amendments to the Article:*
*No IX-2069, 23-03-2004, Official Gazette, 2004, No 54-1830 (15-04-2004)*
*No XI-557, 10-12-2009, Official Gazette, 2009, No 153-6895 (28-12-2009)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*
*No XII-1035, 17-07-2014, published in the RLA, 04-08-2014, ID code 2014-10871*
*Amendments to the Article:*
*No XII-2075, 05-06-2018, published in the RLA, 14-06-2018, ID code 2015-192832018-09837*

## Article 42$^1$. Inspections Organised by the Bank of Lithuania

1. The Bank of Lithuania shall organise and carry out inspections to examine the compliance with the requirements established by legal acts regulating financial market. The Bank of Lithuania shall also have the right to carry out inspections when circumstances related to potential breaches of legal acts regulating financial market transpire or in other cases established by legal acts regulating financial market.

2. The Bank of Lithuania shall take a decision to examine or refuse to examine complaints or notifications (hereinafter – a complaint) about potential breaches of legal acts regulating financial market.

3. The Bank of Lithuania shall not start an inspection on the basis of the received complaint about a potential breach of legal acts regulating financial market, where:

1) the breaches indicated in the complaint are insignificant;

2) the examination of the facts stated in the complaint does not fall within the competence of the Bank of Lithuania;

3) the facts stated in the complaint are being or were already examined and the decision of the Bank of Lithuania was taken or the court decision was enforced regarding them;

4) the person who lodged the complaint has failed to provide, within the time limit set by the Bank of Lithuania, the actual data and supporting documents required for opening of the investigation;

5) the limitation periods set in Article 43$^3$(16) of this Law have expired;

6) there are no actual data that would allow reasonably suspecting a breach of the legal act regulating financial market;

7) the examination of actual circumstances stated in the complaint does not comply with the risk based supervision of financial market carried out by the Bank of Lithuania;

8) the breach of the legal act is apparent and, accordingly, its examination in observance of the provisions of Article 43$^2$ or 43$^3$ of this Law is commenced without the inspection.

4. The types or inspections and the procedure of their performance shall be set forth by legal acts of the Bank of Lithuania.

5. When carrying out an inspection, authorised employees of the Bank of Lithuania shall have the right to:

1) obtain verbal or written explanations from financial market participants under supervision, their managers and employees, as well as from persons suspected of committing breaches of legal acts regulating financial market, invite these persons or their representatives to arrive to the business premises of the employee conducting investigation and give explanations;

2) interrogate the persons not specified in point 1 of this paragraph who agree to be interrogated in order to obtain the information related to the subject matter of inspection;

3) have free access to the premises of the financial market participants under supervision and other persons specified by laws during business hours, examine accounting records and other documents, other sources of information necessary for inspection, receive their copies and extracts, make their copies and copies of information contained in computers and in any media;

4) have free access to the premises of other legal persons not specified in point 3 of this paragraph suspected of committing breaches of legal acts regulating financial market or connected with potential breaches, and of legal persons whose employees are connected with potential breaches during business hours and inspect them, revise the legal person's documents other sources of information necessary for inspection, receive their copies and extracts, make their copies and copies of information contained in computers and in any media;

5) in the case of inspection conducted according to provisions of points 3 or 4 of this paragraph, get familiarised with notes of the legal person's managers and employees, make their copies and copies of information contained in computers and in any media;

6) temporarily take documents of legal persons being inspected which may be used as the evidence of the breach;

7) when suspecting a breach of a legal act, seal the premises used by the legal person where documents are kept (irrespective of the medium in which they are stored) for the period and to the extent necessary for conducting inspection; however, for not more than 3 (three) business days;

8) during the inspection, use technical means to register actual circumstances;

9) when suspecting a breach of a legal act, receive information about subscribers of electronic communications services or registered users of electronic communications services, the related traffic data and content of information transmitted via electronic communications networks from the electronic communications network and/or service providers;

10) receive from credit institutions and other financial institutions data, certificates and copies of documents of financial operations related with the object being inspected;

11) receive data and documents or their copies related with the person being inspected from other entities, public authorities and municipal bodies;

12) have other rights established by legal acts regulating financial market.

6. Where, having started the inspection, there are grounds to suspect breaches of legal acts regulating financial market or weaknesses in financial market participants' activities and where there is a threat for stability of financial system or other public interests, the Bank of Lithuania shall have the right to obligate to terminate the suspected unlawful activities until the inspection is completed and a decision of the Bank of Lithuania on the suspected breach is taken.

7. Actions referred to in points 4, 5, 7 and 9 of paragraph 5 and in paragraph 6 of this Article may be carried out only with the court's permission.

8. Where the Bank of Lithuania takes a decision on actions for the implementation of which the court's permission is required, the application for the permission to implement such actions shall be submitted to Vilnius Regional Administrative Court. The application shall specify the name of the legal person, the nature of suspected infringements of legal acts regulating financial market and the envisaged actions of inspection. The application shall be accompanied by the evidence supporting suspected breaches, weaknesses of financial market participants' activities or threat to stability of financial system or other public interests. The application for the court's permission shall be examined by Vilnius Regional Administrative Court by written procedure. The application shall be examined and the ruling shall be passed no later than within 72 (seventy-two) hours after the

submission of the application. Where the Bank of Lithuania disagrees with the decision of Vilnius Regional Administrative Court to reject the application, the Bank of Lithuania shall have the right to appeal against the ruling with the Supreme Administrative Court of Lithuania within 7 (seven) days. The Supreme Administrative Court of Lithuania shall examine the appeal against the ruling of Vilnius Regional Administrative Court no later than within 7 (seven) days. Representatives of the Bank of Lithuania shall have the right to participate in the hearing of the appeal when it is examined by oral procedure. The courts examining the applications and appeals regarding the issue of the court's permission must ensure confidentiality of the submitted information and envisaged actions.

9. Requirements of the staff members of the Bank of Lithuania in carrying out the actions referred to in paragraph 5 of this Article, excluding point 2 of paragraph 5, shall be mandatory. The failure to fulfil such requirements shall be subject to the application of sanctions specified by laws regulating financial market.

10. For the purpose of implementing the rights established in paragraph 5 of this Article, excluding point 2 of paragraph 5, the Bank of Lithuania may involve police officers.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

**Article 43. Protection of Information Received for the Purposes of Financial Market Supervision**

1. In order to protect the information received by the Bank of Lithuania for the purposes of financial market supervision, the provisions of this Article and of Article 19 of this Law shall apply.

2. The information received for the purposes of financial market supervision may not be published, transferred to anybody or made available in any other way, unless this Law establishes otherwise.

3. The requirement specified in paragraph 2 of this Article must be followed by the Bank of Lithuania, its current or former staff members, auditors acting on behalf of the Bank of Lithuania or other persons, as well as any other persons to whom the information received for the purposes of financial market supervision was transferred in accordance with the procedure set forth by laws.

4. Paragraph 2 of this Article shall not apply to the information which is already published or accessible or from which the data about particular persons cannot be identified directly or indirectly.

5. The Bank of Lithuania shall have the right to use the information received for the purposes of financial market supervision, also including the information received from foreign supervisors, only in performing the functions conferred on it and for the following purposes:

1) checking the compliance with requirements of legal acts regulating financial market;

2) applying sanctions;

3) in administrative proceedings regarding decisions of the supervisory authority;

4) in other proceedings regarding legal relationships governed by legal acts regulating financial market.

6. The Bank of Lithuania shall have the right to publish the results of the stress test performed in accordance with the procedure established by its legal acts or in Article 32 of Regulation (EU) No 1093/2010 of the European Parliament and of the Council of 24 November 2010 establishing a European Supervisory Authority (European Banking Authority), amending Decision No 716/2009/EC and repealing Commission Decision 2009/78/EC (OJ 2010 L 331, p. 12) (hereinafter – Regulation (EU) No 1093/2010) and communicate them to the European Banking Authority.

7. The information received for the purposes of financial market supervision may be transferred:

1) on the grounds established in the Code of Criminal Procedure of the Republic of Lithuania, when the information is necessary for a pre-trial investigation or for hearing of a criminal case before a court, as well as in the cases and according to the procedure set forth in the Law of the Republic of Lithuania on the Prevention of Money Laundering and Terrorist Financing;

2) to the court when the information is necessary in hearing the cases regarding bankruptcy or forced liquidation of a financial market participant under supervision;

3) to provisional investigation commissions of the Seimas of the Republic of Lithuania functioning according to the Law of the Republic of Lithuania on the Provisional Investigation Commissions of the Seimas, where such information is necessary for the performance of their functions;

4) to the State Enterprise Deposit and Investment Insurance, institutions of another Member State of the European Union and the European Economic Area (hereinafter in this Article – a Member State of the European Union) administrating deposit insurance systems, systems of insurance of liabilities to investors or policyholder protection funds, where such information is necessary for the performance of their functions;

5) to authorities supervising business of foreign credit institutions and provision of other financial services, insurance business and financial markets where such information is necessary for the performance of the supervisory function;

6) to central banks of the European System of Central Banks and other institutions performing similar functions, where such information is necessary for the performance of their functions established by legal acts, including the implementation of monetary policy and ensuring of liquidity, supervision of payment, clearing and settlement systems and ensuring the stability of financial system, and in emergency situations – to central banks of the European System of Central Banks immediately;

7) to institutions of Member States of the European Union tasked with implementation of macro-prudential policy, where such information is necessary for the performance of their functions;

8) to the European Banking Authority within the meaning of Regulation (EU) No 1093/2010;

9) to the European Securities and Markets Authority within the meaning of Regulation (EU) No 1093/2010 of the European Parliament and of the Council of 24 November 2010 establishing a European Supervisory Authority (European Banking Authority), amending Decision No 716/2009/EC and repealing Commission Decision 2009/78/EC (OJ 2010 L 331, p. 84);

10) to the European Insurance and Occupational Pensions within the meaning of the Law of the Republic of Lithuania on Insurance and Regulation (EU) No 1094/2010 of the European Parliament and of the Council of 24 November 2010 establishing a European Supervisory Authority (European Insurance and Occupational Pensions Authority), amending Decision No 716/2009/EC and repealing Commission Decision 2009/79/EC (OJ 2010 L 331, p. 48);

11) to the European Systemic Risk Board, where this information is relevant for the performance of its functions under Regulation (EU) No 1092/2010 of the European Parliament and of the Council of 24 November 2010 on European Union macro-prudential oversight of the financial system and establishing a European Systemic Risk Board (OJ 2010 L 331, p. 1), and in emergency situations – immediately;

12) to persons of Lithuania and another Member State of the European Union responsible for the control of liquidation, bankruptcy or other similar proceedings of financial market participants under supervision, and public authorities responsible for the supervision of such persons;

13) to central credit unions, also to contractual or institutional protection schemes referred to in Article 113(7) of Regulation (EU) No 575/2013 of the European Parliament and of the Council of 26 June 2013 on prudential requirements for credit institutions and investment firms and amending Regulation (EU) No 648/2012 (OJ 2013 L 176, p. 1), where such information is necessary for the performance of their functions;

14) to entities performing restructuring, reorganisation, bankruptcy, liquidation procedures of financial market participants under supervision, where such information is necessary for the performance of their functions;

15) in emergency situations, as specified in Article 59(8) and Article $70^1$(5) of the Law of the Republic of Lithuania on Banks, to the Ministry of Finance of the Republic of Lithuania and central government bodies of other Member States of the European Union involved in the drafting of legal acts regarding supervision of credit institutions, financial institutions undertakings providing investment and insurance services, where such information is necessary for the performance of their functions;

16) to auditors of companies of a financial market participant under supervision or financial group to which the financial market participant under supervision belongs, as well as to public authorities of Lithuania and of another Member State of the European Union responsible for supervision of such entities, where such information is necessary for the performance of their functions;

17) to independent actuaries of insurance and reinsurance undertakings of Lithuania and of another Member State of the European Union and authorities in charge of supervision of such actuaries;

18) other public authorities, where such information is necessary for the performance of their functions and where this is required for the financial market supervision, prevention of infringements or restructuring of financial market participants under supervision.

8. The information received for the purposes of financial market supervision may be transferred to the institutions specified in points 3–7, 12, 14, 16, 17 and 18 of paragraph 7 of this Article, where the information protection requirements applicable to them are at least the same as those established by this Law.

9. The information under point 5 of paragraph 7 of this Article may be transferred to a supervisory authority of a foreign country, other than a Member State of the European Union where there is an agreement concluded with such supervisory authority providing for the exchange of information received for the purposes of supervision and where the information protection requirements applicable to the supervisory authority of the foreign country according to its laws are at least the same as those established by this Law.

10. The information received for the purposes of supervision from the authority supervising activities of provision of financial services, insurance business and financial markets of a country which is a Member State of the European Union, or the information received during inspection carried out in another Member State of the European Union may be transferred under points 3, 5, 12, 13, 15, 16, 17 and 18 of paragraph 7 of this Article or paragraph 9 of this Article only where a consent of the institution from which the information was received or of the supervisory authority of the Member State of the European Union is obtained only for that purpose for which the consent was given.

11. Where the information received for the purposes of supervision consists of personal data, the Bank of Lithuania and other persons to whom such information is transferred shall process them in accordance with the procedure set forth by legal acts regulating personal data protection.

12. Provisions of this Article *mutatis mutandis* shall also apply to the information received for the purposes of information or statistics in accordance with Article 70(1) and (2) of the Law on Banks.

*Amendments to the Article:*
*No IX-2069, 23-03-2004, Official Gazette, 2004, No 54-1830 (15-04-2004)*
*No XI-557, 10-12-2009, Official Gazette, 2009, No 153-6895 (28-12-2009)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*
*Amendments to the Article:*
*No XII-1691, 14-05-2015, published in the RLA, 20-05-2015, ID code 2015-07667*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*


**Article 43[1]. Examination of Applications for Licenses, Authorisations, Consents or Other Actions and Decisions of the Bank of Lithuania**

1. The conditions and procedure for submission and examination of applications for granting of licences, authorisations, consents, approvals or performing other actions established by legal acts regulating financial market (hereinafter collectively in this Article – authorisations) as well as detailed requirements for the submitted documents are set forth by Regulation (EU) No 1024/2013, laws regulating financial market and their implementing legislation.

2. Any application for an authorisation shall be examined and a decision shall be taken within 30 (thirty) days of the date of submission of all required documents or during other time limits set by laws regulating financial market. Where the submitted documents have any shortcomings of form or content or not all documents or information necessary for taking the decision are submitted, the Bank of Lithuania shall have the right to require the elimination of the shortcomings and/or the submission of the missing documents or information. In addition, the Bank of Lithuania shall have the right to request additional documents and information necessary for taking the decision. Where

the Bank of Lithuania reasonably requests the submission of additional documents or information or where such documents or information are submitted by the applicant himself, the time limit for examining the application and taking the decision shall be calculated from the date of submission of such additional documents and information, unless laws regulating financial market establish otherwise.

3. The Bank of Lithuania shall have the right to refuse granting the authorisation where there are sufficient grounds to believe that the granting of the authorisation would infringe the interests of customers of financial market participants under supervision or the financial system stability and soundness or other public interests may be threatened, and also where other grounds for refusing the authorisation established by laws regulating financial market exist.

4. The Bank of Lithuania shall notify the applicants about the decision taken regarding the granting of the authorisation no later than within 5 (five) business days of the date of taking the decision, unless legal acts regulating financial market establish otherwise. A refusal of the Bank of Lithuania to grant an authorisation shall be reasoned.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

**Article 43². Mandatory Instructions Given by the Bank of Lithuania**

1. The Bank of Lithuania shall give mandatory instructions established by laws regulating financial market where at least one of the grounds for the application of mandatory instructions established by laws regulating financial market exists.

2. Prior to deciding whether to give mandatory instructions, the Bank of Lithuania shall set the time limit of at least 14 (fourteen) days from the notification date to provide explanations and shall notify about that the person to whom the mandatory instruction is to be given, by providing essential information about provisions of legal acts and established actual data which constitute the grounds for application of mandatory instructions. The Bank of Lithuania shall have the right to ignore the explanations provided not in due time where such explanations could have been provided earlier and their late provision is likely to delay the examination of the issue. Where during any process concerning the giving of mandatory instructions new evidence is submitted, the person shall be immediately allowed to get familiarised with such evidence and to provide his explanations within at least 5 (five) business days of getting familiarised with the submitted evidence. The failure to submit to the explanations to the Bank of Lithuania within the specified time limit shall not prevent from deciding on the issue of application of the mandatory instruction.

3. The Bank of Lithuania shall notify the person to whom the mandatory instruction is given about the venue, date and time of the consideration of the issue regarding the giving mandatory instructions no later than within 10 (ten) business days after the notification date until the date of the consideration of the issue regarding the giving the mandatory instruction. The person to whom the mandatory instruction is given or the person's representatives shall have the right to participate in the consideration of the issue by the Bank of Lithuania; however the non-arrival of the person to whom the mandatory instruction is given or of the person's representative shall not prevent from considering the issue of giving the mandatory instructions, where the person or the person's representative has been duly notified of the consideration and has failed to provide evidence of being unable to arrive for valid reasons. A due notification should be a notification sent by registered mail to the registered office address available in the Register of Legal Entities or to the natural person's officially declared place of residence or workplace, unless the person has indicated another address for delivery of correspondence, or the notification is sent to the electronic mail delivery address available in the Register of Legal Entities or in the Population Register. The date of serving notifications sent by registered mail referred to in paragraphs 2 and 3 of this Article shall be the date on which the notification is served to the addressee, to any of the adult family members who live together with the addressee or to the person responsible for acceptance of correspondence at the workplace, and in the case of the notification sent to the electronic mail delivery address – the business day following the date of sending the notification. Refusal to accept the notification or to

acknowledge its receipt by signature shall be considered to be equal to the serving of the notification.

4. In urgent cases, where it is necessary to respond operatively in order to protect financial system stability or other public interests, the Bank of Lithuania shall have the right to decide whether to give mandatory instructions disregarding provisions of paragraphs 2 and 3 of this Article. The person who is given a mandatory instruction disregarding provisions of paragraphs 2 and 3 of this Article, shall have the right, within 14 (fourteen) days of the date on which the decision on the mandatory instruction is received, to provide written explanations regarding the absence of grounds for giving the mandatory instruction. The Bank of Lithuania shall assess the explanations within 30 (thirty) days of receiving them and shall take the decision on withdrawal or non-withdrawal of the given mandatory instruction.

5. Upon a reasoned request of the person to whom a mandatory instruction is given, the Bank of Lithuania shall have the right to defer the time limit for the fulfilment of the mandatory instruction, where the person cannot fulfil the given mandatory instruction in a timely manner for objective reasons and the Bank of Lithuania is provided with the respective supporting evidence.

6. A temporarily given mandatory instruction shall apply until the time limit set in the decision of the Bank of Lithuania on giving the mandatory instruction, which may be indicated either as a particular date, a period of time or linked with occurrence of certain conditions (cessation of circumstances), unless the Bank of Lithuania takes a decision on its early withdrawal. The Bank of Lithuania shall withdraw the temporarily applied mandatory instruction immediately, no later than within 5 (five) business days of the date on which the Bank of Lithuania determines that the grounds for applying the mandatory instruction have ceased to exist.

7. The giving of mandatory instructions shall not deprive the Bank of Lithuania of the right to concurrently apply sanctions established by laws regulating financial market.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

## Article 43³. Application of Sanctions

1. The Bank of Lithuania shall apply sanctions established by laws regulating financial market where at least one of the grounds for the application of sanctions established by laws exists.

2. Prior to deciding whether to apply sanctions, the Bank of Lithuania shall set the time limit of at least 14 (fourteen) days from the notification date for the submission of explanations and shall notify about that the person to whom the sanction is to be applied, by providing essential information about the provisions of legal acts and established actual data which constitute the grounds for application of the sanction (sanctions). The Bank of Lithuania shall have the right to refuse accepting the explanations submitted after expiry of the time limit set by the Bank of Lithuania for the submission of explanations, where such explanations could have been submitted earlier and their late submission will delay the examination of the matter. Where during any process concerning the sanction new evidence is provided, the person shall be immediately allowed to get familiarised with such evidence and to provide his explanations within at least 5 (five) business days of getting familiarised with the provided evidence. The failure to submit to the explanations to the Bank of Lithuania within the specified time limit shall not prevent the Bank of Lithuania from deciding on the issue of application of the sanction.

3. The Bank of Lithuania shall notify the person to whom the sanction is applied about the venue, date and time of the consideration of the issue of application of the sanction no later than within 10 (ten) business days after the notification date until the date of the consideration of the issue regarding the application of the sanction. A person who is suspected of infringement of a legal act, the person's representatives shall have the right to participate in the consideration of this issue by the Bank of Lithuania; however the non-arrival of the person who is suspected of infringement of a legal act or of the person's representative shall not prevent from the consideration of the issue of application of the sanction, where the person or the person's representative has been duly notified of the consideration and has failed to provide evidence of being unable to arrive for valid reasons. A due notification should be a notification sent by registered mail to the registered office address

available in the Register of Legal Entities or to the natural person's officially declared place of residence or workplace, unless the person has indicated another address for delivery of correspondence, or the notification is sent to the electronic mail delivery address available in the Register of Legal Entities or in the Population Register. The date of serving notifications sent by registered mail referred to in paragraphs 2 and 3 of this Article shall be the date on which it is served to the addressee, to any of the adult family members who live together with the addressee or to the person responsible for acceptance of correspondence at the workplace, and of the notification sent to the electronic mail delivery address – the business day following the date of sending the notification. Refusal to accept the notification or to acknowledge its receipt by signature shall be considered to be equal to the serving of the notification.

4. In urgent cases, where it is necessary to respond operatively in order to protect financial system stability or other public interests, the Bank of Lithuania shall have the right to decide whether to apply sanctions disregarding provisions of paragraphs 2 and 3 of this Article. The person to whom a sanction is applied disregarding provisions of paragraphs 2 and 3 of this Article, shall have the right, within 14 (fourteen) days of the date on which the decision to apply the sanction is received, to provide written explanations regarding the absence of grounds for the application of the sanction. The Bank of Lithuania shall assess these explanations within 30 (thirty) days of receiving them and shall take the decision on withdrawal or non-withdrawal of the applied sanction.

5. A person who is suspected of infringement of a legal act shall have the right to get familiarised with the material available to the Bank of Lithuania on the basis of which the sanction is applied (except for the information constituting state, official, commercial or other secret protected by laws), give explanations, submit evidence, have access to an advocate or other authorised representative. During the process of application of the sanction, a free of charge access to an interpreter's services shall be guaranteed for natural persons who do not know the Lithuanian language. Where, when addressing the issue of application of the sanction, witnesses are heard, the person suspected of committing the infringement of a legal act shall have the right to question them and also to propose his own witnesses. Where the information and/or data constituting state, official, commercial or other secret protected by laws is the only evidence on which the imposition of the sanction is based and it is not known to the person suspected of committing the infringement of a legal act, and the classified information and/or data cannot be declassified, the consideration of the issue of application of the sanction must be terminated upon receipt of the request from the person suspected of committing the infringement of a legal act to terminate the consideration of the issue of application of the sanction.

6. Having finished the considering the issue of application of the sanction, the Bank of Lithuania shall, within 5 (five) business days, decide on:

1) the application of sanctions;

2) the giving of mandatory instructions;

3) the conducting an additional inspection or extension of an inspection;

4) the non-application of sanctions where no infringement is identified, where the consideration of the issue of application of the sanction is terminated on the ground specified in paragraph 5 of this Article or where there is no ground for application of the sanction, as well as in the cases specified in Article 43[4] of this Law;

5) taking other actions established by laws regulating financial market.

7. When deciding on application of the sanction, selecting the particular sanction and its size the Bank of Lithuania shall take account of:

1) the seriousness and duration of the identified infringement;

2) the amount of income, other material benefits received, losses avoided or damage inflicted by the person due to the infringement, where such amount is determinable;

3) the fault of the legal person, the form and type of fault of a natural person, as well as the financial strength of the person to whom the sanction is applied;

4) the previous infringements committed by the person to whom the sanction is applied and sanctions imposed on the person, as well as cooperation of the person with the Bank of Lithuania in the investigation of the infringement of the legal act;

5) the mitigating and aggravating circumstances established by this Law and other legal acts regulating financial market;

6) the consequences of identified infringements of legal acts and of the sanction to be applied for the stability and soundness of financial market;

7) the measures taken by the person to whom the sanction is applied in order to prevent the reoccurrence of the infringement in the future;

8) other circumstances established by laws regulating financial market or other relevant circumstances.

8. The circumstances where the person suspected of committing the infringement of a legal voluntarily precludes harmful consequences of the infringement of the legal act, compensates for losses or rectifies inflicted damage, cooperates with the Bank of Lithuania and assists actively in clarifying the circumstances of the infringement shall be considered to be mitigating circumstances. The circumstances other than those specified in this paragraph may also be considered by the Bank of Lithuania as mitigating circumstances.

9. The circumstances where the person suspected of committing the infringement of a legal act has infringed the legal act deliberately, hinders the investigation into the infringement of the legal act, conceals the infringement of the legal act ignoring the fact that the Bank of Lithuania has drawn attention to the infringements or shortcomings of activities of the financial market participant under supervision, or repeatedly commits the dame infringement shall be considered to be aggravating circumstances. An infringement of a legal act shall be considered to be committed repeatedly, where the person, who is suspected of committing the infringement of the legal act, commits the same infringement of the legal act within the last twelve months of the day of enforcement of the decision on the application of the sanction. Having committed a repeated infringement, the time limit specified in this paragraph shall be calculated again. Where the aggravating circumstances referred to in this paragraph constitute the circumstances qualifying the infringement they shall not be taken into account.

10. Where the sanction applied is a fine, the particular size of the imposed fine shall be determined in three steps taking account of the base rate of the penalty and the circumstances specified in paragraphs 7, 8 and 9 of this Article. Step one – taking account of the seriousness and duration of the identified infringement, the base rate of the fine shall be determined which may not exceed 50 per cent of the maximum rate of the fine applicable for such infringement. Step two – in justified cases, the base rate of the fine shall be reduced or increased taking account of mitigating and aggravating circumstances and other circumstances positively or negatively affecting the person's situation. Where only mitigating circumstances or other circumstances positively affecting the person's situation are identified, the base rate of the fine shall be reduced, and where only aggravating circumstances or other circumstances negatively affecting the person's situation are identified, the base rate of the fine shall be increased. Where both mitigating circumstances or other circumstances positively affecting the person's situation and aggravating circumstances or other circumstances negatively affecting the person's situation are identified, the base rate of the fine shall be reduced or increased taking account of the number and relevance of the circumstances. Step three – in justified cases, the rate of the determined under the previous steps shall be reduced or increased taking account of the need to ensure the proportionality, dissuasive effect of the sanction and other significant circumstances not assessed under the first and second steps. The supervisory authority acting in observance of provisions of this Article shall adopt the legal act establishing the rules for calculation of the fine.

11. A decision of the Bank of Lithuania on the application of the sanction (sanctions) shall be reasoned and based only on such evidence to which the sanctioned person had been granted access in accordance with the procedure set forth in paragraph 5 of this Article. The decision taken by the Bank of Lithuania shall specify the legal basis for taking the decision, the circumstances of

infringement of the law, the sanctioned person's explanations and their assessment, the procedure of appealing against the decision.

12. A decision of the Bank of Lithuania to apply the sanction (sanctions) to a person shall enter into force from its adoption, unless established otherwise by laws or by the decision, and shall apply to such person not earlier than from serving the decision to the person. The decision of the Bank of Lithuania on application of the sanction (sanctions), within 3 (three) business days of the date of its adoption, shall be sent to the person regarding whose actions the issue of imposing the sanction has been considered, or shall be served to the person against signature.

13. Where a temporary sanction is imposed it shall be applied until the time limit specified in the decision of the Bank of Lithuania on its application, which may be indicated either as a either as a particular date, a period of time or linked with occurrence of certain conditions (cessation of circumstances), unless the Bank of Lithuania takes a decision on its early withdrawal. The Bank of Lithuania shall withdraw the temporary sanction immediately, no later than within 5 (five) business days after the date on which the Bank of Lithuania determines that the grounds for its application have ceased to exist.

14. The Bank of Lithuania may apply to the same person one or more sanctions. The application of a sanction shall not relieve the person from the fulfilment of the obligation for the non-fulfilment of which he was sanctioned. The application of a sanction on legal persons shall not relieve their managers and employees from civil, administrative or criminal liability established by laws and shall not prevent the Bank of Lithuania from considering the issue of suspension and cancellation (withdrawal) of licences, authorisations, consents, approvals non-objections issued by the Bank of Lithuania under laws regulating financial market.

15. Information on applied sanctions, including information on the subject matter of the committed infringement of the legal act and the identity of the person who committed it (forename and surname, legal person's name and code) shall be published on the internet website of the Bank of Lithuania immediately after sending or serving the decision of the Bank of Lithuania to the sanctioned person in accordance with the procedure set forth in paragraph 12 of this Article. Where the decision on application of the sanction is appealed, the information on the appeals lodged with respect to the applied sanctions and their examination results shall also be published on the internet website of the Bank of Lithuania. Where the publication of the information on applied sanctions (excluding the sanction – the publication of information about the infringement and the person who committed it) is likely to negatively affect the stability of financial market, the pending pre-trial investigation or inflict disproportionate damage to natural or legal persons, the publication of such information shall be postponed until cessation of such circumstances or such information shall be published without disclosing the identity of the person who committed the infringement. The Bank of Lithuania shall ensure that the published information is accessible for five years after its publication date.

16. Unless other laws regulating financial market establish otherwise, a decision on application of sanctions may be taken by the Bank of Lithuania where not more than 3 (three) years have elapsed after the infringement date (in the case of a continuing infringement – from the end of the infringement). Where the Bank of Lithuania opens an investigation into a potential infringement of a legal act regulating financial market and notifies in writing the person suspected of committing the infringement, from the date of serving such notification the period of limitation specified in this paragraph shall be terminated; however, in such case, the decision of the Bank of Lithuania on application of the sanction may not be taken where more than 5 (five) years have elapsed after the infringement date (in the case of a continuing infringement – from the end of the infringement).

17. Materials about infringements with indications of criminal acts shall be referred to a pre-trial investigation body or to a prosecutor who shall decide whether to open a pre-trial investigation in accordance with the procedure set forth by the Republic of Lithuania Code of Criminal Procedure. Having received from the pre-trial investigation body or the prosecutor a notification about the opened pre-trial investigation, the consideration of the issue regarding application of the sanction shall be suspended. Where the pre-trial investigation body or the prosecutor refuses opening the

pre-trial investigation or where the pre-trial investigation is terminated, the collected materials shall be returned to the supervisory authority and the consideration of the issue regarding application of the sanction shall be continued. Where the consideration of the issue regarding application of the sanction is suspended, the time limit for taking the decision referred to in paragraph 16 of this Article shall be suspended. Where the consideration of application of the sanction is continued, the time limit for taking the decision referred to in paragraph 16 of this Article shall be extended. Having received from the pre-trial investigation body or the prosecutor a notification about the issued indictment, the consideration of the issue regarding application of the sanction shall be terminated.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

### Article 43⁴. Right of the Bank of Lithuania Not to Apply Sanctions

When considering whether to apply sanctions established by laws, taking account of circumstances referred to in Article 43³(7) and (8) of this Law and in the event of absence of any aggravating circumstances established in Article 43³(9) of this Law or in other laws, acting in observance of criteria of justice and reasonableness, where the infringement is minor or where there are grounds to believe that the purpose of supervision can also be achieved by other means and not only by imposing sanctions, the Bank of Lithuania may not apply sanctions.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

### Article 43⁵. Appeal Against Decisions, Acts (Omissions) of the Bank of Lithuania

1. Persons whose rights or interests protected by laws are infringed shall have the right to appeal before the court against the decisions, acts (omissions) of the Bank of Lithuania referred to in this Chapter in accordance with the procedure set forth in the Law of the Republic of Lithuania on Administrative Proceedings.
2. Lodging of an appeal with a court until its examination shall not suspend the validity of the appealed decision, except for a decision to impose statutory fines or enforce an action.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

### Article 43⁶. Collection of Fines

1. A fine imposed by the Bank of Lithuania shall be paid into the State Budget no later than within 40 (forty) days from the date on which the person receives the decision of the Bank of Lithuania to impose the fine. In the event of appeal against such decision, the fine shall be paid no later than within 40 (forty) days of the date of enforcement of the court order.
2. Upon a motivated request of a person the Bank of Lithuania shall have the right to arrange the payment of the fine or its part during the period of up to 2 (two) years, where the person is unable to pay the fine for objective reasons.
3. A decision of the Bank of Lithuania to impose a fine shall be an enforcement document enforceable in accordance with the procedure set forth by the Republic of Lithuania Code of Civil Procedure. A decision of the Bank of Lithuania may be submitted for enforcement no later than within 3 (three) years of the date of its adoption or, in the event of appeal against the decision of the Bank of Lithuania – of the date of enforcement of the court order. Where the payment of the fine was arranged in the manned specified in paragraph 2 of this Article, the decision of the Bank of Lithuania may be submitted for enforcement within 3 (three) years after expiry of the term of its arrangement.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

### Article 43⁷. Reports on Infringements

The Law of the Republic of Lithuania on the Protection of Whistleblowers and the Bank of Lithuania shall establish the measures encouraging to report infringements of provisions of legal

acts regulating financial market, including Regulation (EU) No 575/2013, Regulation (EU) No 600/2014, Regulation (EU) No 909/2014, Regulation (EU) No 596/2014, and Regulation (EU) No 1286/2014 or their implementing legislation. These measures shall meet the following requirements:

1) the procedures for receiving and assessing reports on the above referred infringements shall be provided;

2) the confidentiality of the person reporting the committed infringements shall be ensured, except where the disclosure of such information is required in the cases and in accordance with the procedure established by laws;

3) the personal data shall be processed in accordance with the procedure established by legal acts regulating personal data protection;4) the financial market participant's employees who report infringements must be adequately protected from retaliation, discrimination or other unlawful or unfair behaviour.

*Supplemented with the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*


**Article 44.** *Repealed with effect from 24-11-2015*
*Repeal of the Article:*
*No XII-2058, 24-11-2015, published in the RLA, 02-12-2015, ID code 2015-19169*


**Article 45. Reimbursement for the Damage Caused by the Illegal Actions of the Bank of Lithuania or Bank of Lithuania Staff, and Compensation of Expenses Incurred by Bank of Lithuania Staff in Relation to Proceedings or Actions Brought Against Them**

1. The damage caused by illegal actions of the Bank of Lithuania or Bank of Lithuania staff in relation to the performance of the financial market supervision shall be reimbursed only in the case if the person to have suffered the damage proves that the damage was caused through intent or gross negligence of the Bank of Lithuania or Bank of Lithuania staff.

*Amendments to the paragraph of the Article:*
*No XII-2058, 24-11-2015, published in the RLA, 02-12-2015, ID code 2015-19169*


2. The Bank of Lithuania shall pay a compensation to its current or former staff equal to their expenses incurred due to a criminal action brought or proceedings related to an administrative offence initiated against them or due to other actions taken by law enforcement institutions in relation to such acts or omissions, or due to civil actions brought against them in relation to their acts or omissions done in the course of official duty related to the performance of financial market supervisory. The reimbursement procedure shall be established by the Board of the Bank of Lithuania.

*Amendments to the paragraph of the Article:*
*No XII-2450, 16-06-2016, published in the RLA, 27-06-2016, ID code 2016-17718*


3. A member or former member of the staff of the Bank of Lithuania must repay the compensation paid by the Bank of Lithuania as provided by paragraph 2 herein in the following cases:

1) when he or she, following the settlement of criminal or administrative actions against him or her, is found guilty of criminal act or administrative offence or is found guilty by the court of causing damage;

*Amendments to the paragraph of the Article:*
*No XII-2450, 16-06-2016, published in the RLA, 27-06-2016, ID code 2016-17718*


2) when the expenses incurred by him or her and the legal charges he or she is awarded are paid by the party ordered to pay the charges. If the sum of legal charges ordered by the court and paid to him or her is lower than the compensation, the amount to be repaid shall be equal to the sum paid by the party ordered to pay the charges.

**Article 46. Cooperation with Financial Market Supervision Authorities of Other States**
The Bank of Lithuania shall have the right to conclude agreements on cooperation in the area of financial market supervision with the institutions of other states performing the financial market supervision, the European Banking Authority, the European Insurance and Occupational Pensions Authority, the European Securities and Markets Authority and other institutions of the Republic of Lithuanian and foreign countries.
*Amendments to the Article:*
*No IX-2069, 23-03-2004, Official Gazette, 2004, No 54-1830 (15-04-2004)*
*No XI-557, 10-12-2009, Official Gazette, 2009, No 153-6895 (28-12-2009)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*


**Article 46[1].** *Repealed with effect from 01-01-2012*
*The Law supplemented with the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*Amendments to the Article:*
*No XI-557, 10-12-2009, Official Gazette, 2009, No 153-6895 (28-12-2009)*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*


# CHAPTER 7[1]
## OUT OF COURT SETTLEMENT OF DISPUTES BETWEEN CONSUMERS AND FINANCIAL MARKET PARTICIPANTS


**Article 47. Out of Court Settlement of Disputes between Consumers and Financial Market Participants**
1. The Bank of Lithuania shall settle disputes between the consumers listed in paragraph 2 of this Article (hereinafter – consumers) and financial market participants referred to in Article 42 of this Law and other legal persons, which arise from the provision of financial and (or) additional investment services and the insurance service contract or related thereto, in case the law of the Republic of Lithuania applies to such a contract; as well as the disputes between the consumers and economic entities, which arise from the compliance with the requirements laid down in the Law of the Republic of Lithuania on Payments where the settlement of the dispute is attributed to the Bank of Lithuania by virtue of laws regulating financial market. The Bank of Lithuania shall also settle the disputes between consumers – participants of collective investment undertakings or pension funds established in Lithuania – and managers of these entities and funds, which arise from the relations of participation in an appropriate entity or fund, as well as disputes between investors and issuers, who perform the primary securities issue on their own, arising from the relations of securities circulation. Hereinafter the services mentioned in this paragraph shall be referred to in this Article as 'financial services', and the providers of these services – as 'financial market participants'.
*Amendments to the paragraph of the Article:*
*No XII-2562, 30-06-2016, published in the RLA, 13-07-2016, ID code 2016-20316*
*No XIII-1231, 05-06-2018, published in the RLA 14-06-2018, ID code 2018-09837*


2.       For the purposes of this Article, the consumer shall be a natural person:
1)       concluding the financial services contract with the financial market participant, except for professional clients and informed investors, to meet personal, family or household needs;
*Amendments to the paragraph of the Article:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*


2)       the insured, beneficiary, aggrieved third person or other person, in case the financial services are aimed at their personal, family or household needs, while the financial market participant at the moment of the conclusion of the contract was aware or had to be aware about the purpose of financial services;

3)        whose rights and obligations in respect of the financial market participant are related to the financial services contract, even if he is not the financial service contractual party, provided that in the relations with the financial market participant such a person has no aims related to business or professional activities.

3.        The consumer, who considers that the financial market participant has violated his rights or legitimate interests in contractual or related relations, shall have the right to appeal to the court or to the Bank of Lithuania, which is an institution of consuming-related dispute settlement out of court. The appeal to the Bank of Lithuania shall not deprive the consumer from the right to appeal to the court.

4.        The consumer, who considers that the financial market participant has violated his rights or legitimate interests in contractual or related relations, and intends to appeal to the Bank of Lithuania for the settlement of the dispute in issue, prior to appealing to the Bank of Lithuania must contact the financial market participant in writing indicating the dispute's circumstances and his claim. A financial market participant must examine the written application of the consumer and, no later than within 15 (fifteen) business days from the date of receiving the application, provide a detailed, reasoned and documented written response on paper or in another durable medium where the user and the financial market participant have agreed to do so. In exceptional cases, where for reasons that are out of control of the financial market participant, the response cannot be provided within 15 (fifteen) business days, the financial market participant  should send a holding reply clearly stating the reasons for the delayed response to the complaint and the time limit within which the client will receive the final response. In any case, the time limit for the submission of the final response may not exceed 35 (thirty-five) business days of the day of the receipt of the complaint. The financial market participant shall examine complaints of users.

*Amendments to the paragraph of the Article:*
*No XIII-1095, 17-04-2018, published in the RLA, 27-04-2018, ID code 2018-06731*
*No XIII-1304, 27-06-2018, published in the RLA, 04-07-2018, ID code 2018-11309*

5.        The decision of the Bank of Lithuania shall be of the nature of recommendation and shall not be appealed to court. The Bank of Lithuania shall on its website announce the information about those financial market participants who do not comply with the decisions of the Bank of Lithuania.

6. The procedure of out of court settlement of disputes between consumers and financial market participants shall be regulated by the Law of the Republic of Lithuania on Consumer Protection and the Rules of the Procedure of Out of Court Settlement in the Bank of Lithuania of Disputes Between Consumers and Financial Market Participants, approved by the Bank of Lithuania.

*Note of the RLA. Disputes of consumers and financial market participants the settlement of which was started before 31 December 2015 shall be completed in observance of provisions of legal acts applicable before 31 December 2015.*
*Amendments to the Article:*
*No XII-2088, 26-11-2015, published in the RLA, 07-12-2015, ID code 2015-19366*

## CHAPTER 7[2]
## MACRO-PRUDENTIAL POLICY

**Article 47[1]. Functions and rights of the Bank of Lithuania when conducting macro-prudential policy**

1. The Bank of Lithuania shall conduct macro-prudential policy on its own initiative or with regard to the recommendations or warnings regarding systemic risk of the European Systemic Risk Board. In case the Bank of Lithuania does not take the recommendations of the European Systemic Risk Board into account, it must submit the reasons for that to the European Systemic Risk Board.

2. Measures of macro-prudential policy and their application procedure shall be established by the legislation of the Bank of Lithuania.

3. In conducting macro-prudential policy, the Bank of Lithuania shall:

1) identify, monitor and evaluate threat arising to the stability of the financial system of the country;

2) determine and announce strategy of the macro-prudential policy;

3) apply necessary macro-prudential policy measures established in the legislation;

4) establish selection methods of systemically important financial institutions on the state level;

5) without delay and to the extent necessary in order to ensure financial stability, announce about the adopted decisions, including the reasons thereof, unless it poses a threat to the financial stability and/or is related to confidential information.

4. In conducting macro-prudential policy, the Bank of Lithuania shall have the right to:

1) issue legal acts and recommendations for financial market participants;

2) upon request, receive information and data required for conducting macro-prudential policy from state institutions, financial market participants and other enterprises, institutions, organizations, including data on specific institutions, financial market participants and other enterprises, institutions, organizations and information indirectly related to the macro-prudential policy conducted by the Bank of Lithuania (information about the real estate market and other factors influencing activities of financial institutions);

3) apply macro-prudential policy measures for financial market participants in the cases and according to the procedure set forth in the legal acts of the Bank of Lithuania;

4) make public and non-public communications intended for specific persons on systemic risk.

**Article 47[2]. Protection of information received when carrying out macro-prudential policy**
Information received by the Bank of Lithuania in conducting macro-prudential policy shall be considered confidential, except for information which has already been publicly announced or made accessible or on the basis whereof data on specific persons cannot be directly or indirectly established. The confidential information obtained may be used solely for the performance of the functions specified by this Law and related to conducting macro-prudential policy and supervising financial market participants and may not be publicly announced, divulged or made otherwise accessible, except in the cases specified by laws.

**Article 47[3]. Payment of damages resulting from illegal activities of the Bank of Lithuania and staff of the Bank of Lithuania and compensation of expenses for the staff of the Bank of Lithuania related to the actions brought against them or claims lodged**
Provisions of Article 45 of this Law shall apply *mutatis mutandis* to the payment of damage resulting from the illegal activities of the Bank of Lithuania or the staff of the Bank of Lithuania related to conducting macro-prudential policy and compensation of expenses related to the actions brought against the staff of the Bank of Lithuania or claims lodged related to conducting macro-prudential policy.

**Article 47[4]. Cooperation with other institutions in the area of macro-prudential policy**
1. In conducting macro-prudential policy and before adopting a decision regarding application of measures of macro-prudential policy, the Bank of Lithuania shall have a right to consult with the Ministry of Finance of the Republic of Lithuania without prejudice to the respective powers of the Ministry of Finance and its own independence.

2. The Bank of Lithuania shall cooperate, exchange information and have the right to enter into agreements with the European Central Bank, the European Systemic Risk Board, institutions conducting macro-prudential policy in other states, and the financial market supervisory institutions, other institutions of the Republic of Lithuania, foreign states, the European Union and/or international institutions. The Bank of Lithuania shall inform the European Systemic Risk Board about the actions taken to address the issues of systemic risk at a national level.

*Supplemented with the Chapter:*

*No XII-1097, 18-09-2014, published in the RLA, 23-09-2014, ID code 2014-12712*

# CHAPTER 7[3]
## SUPERVISION OF ACTIVITIES OF CASH HANDLERS

**Article 47[5]. Rights and Obligations of the Bank of Lithuania in Supervising Cash Handling**

Activities

1. The Bank of Lithuania shall supervise cash handling activities of cash handlers and shall apply sanctions to cash handlers in observance of provisions of this Law, Regulation (EC) No 1338/2001, Regulation (EU) No 1210/2010, Decision ECB/2010/14 and legal acts of the Bank of Lithuania on supervision of activities of cash handlers. This supervision shall not cover other activities carried out by cash handlers which are not regulated by this Law.

2. In supervising cash handling activities of cash handlers the Bank of Lithuania shall have the right to give mandatory instructions to cash handlers and *mutatis mutandis* act in observance of provisions of Article 42(4)(1)-(10) of this Law.

### Article 47[6]. Inspections of Cash Handlers Organised by the Bank of Lithuania

1. The Bank of Lithuania shall organise and carry out inspections to assess the compliance with the requirements established by legal acts referred to in Article 6(3) of this Law are fulfilled.

2. The types and frequency of inspections, the procedure of conducting and documenting them shall be set forth by legal acts of the Bank of Lithuania.

3. In carrying out an inspection, provisions of Article $42^1$(5)(1), (2), (3), (6), (8) and (11) of this Law *mutatis mutandis* shall apply to the rights of authorised employees of the Bank of Lithuania. In addition, authorised representatives of the Bank of Lithuania shall have the right to temporarily take euro banknotes or coins handled by the cash handler being inspected for a period not exceeding 30 (thirty) calendar days, in order to check them in the premises of the Bank of Lithuania.

4. Requests of employees of the Bank of Lithuania in implementing the rights specified in paragraph 3 of this Article shall be binding on a cash handler. In the event of non-compliance with these requirements the cash handler shall be subject to sanctions specified in Article 47[7] of this Law.

5. For the purpose of implementing the rights specified in paragraph 3 of this Article, except for the right specified in Article $42^1$(5)(2) of this Law, the Bank of Lithuania may involve police officers.

6. Provisions of Article 43 of this Law shall apply to the protection of information received by the Bank of Lithuania for the purposes of supervision of cash handling activities of cash handlers.

### Article 47[7]. Giving Mandatory Instructions and Applying Sanctions of the Bank of Lithuania

1. Having identified any infringements, the Bank of Lithuania shall give to a cash handler one or more mandatory instructions:

1) to temporarily prohibit on behalf of the European Central Bank from recirculation of certain euro banknote and coin series and denominations;

2) to rectify the infringements within the time limit set by the Bank of Lithuania.

2. cash handlers must fulfil the mandatory instructions of the Bank of Lithuania within the time limits set thereby and immediately, no later than on the next day after the fulfilment, notify about that in writing the Bank of Lithuania.

3. The giving of mandatory instructions shall not deprive the Bank of Lithuania of the right to concurrently apply sanctions specified in paragraph 4 of this Article.

4. The Bank of Lithuania shall apply one or more sanctions to the same person who committed infringements:

1) warn about the infringements;

2) impose the fines specified in this Article.

5. Sanctions may be applied when at least one of the following grounds exists:

1) the information specified by Decision ECB/2010/14 or required by the Bank of Lithuania is not provided within the established time limits or the information provided is wrong, incomplete or inaccurate;

2) the mandatory instructions given by the Bank of Lithuania are not fulfilled in accordance with the established procedure or are fulfilled improperly;

3) the inspections carried out by the Bank of Lithuania are hindered;

4) the requirements of Regulation (EU) No 1210/2010 or Decision ECB/2010/14 regarding the authenticity and fitness checks of euro banknotes and coins are not fulfilled.

6. The Bank of Lithuania shall impose a fine on a legal person in the amount of up to 10 per cent of the total annual turnover of the legal person.

7. The total annual turnover of a legal person on the basis of which the amount of a fine is determined shall be established according to the data of the last available approved (signed) annual financial statements. Where a legal person belongs to the parent undertaking, the total annual turnover on the basis of which the amount of a fine is determined shall be taken from the last available approved (signed) annual consolidated financial statements of the principal parent undertaking.

8. Where the infringements listed in paragraph 5 of this Article result in illegally received income, other pecuniary advantage, losses avoided or damage incurred, and the amount of such income, other pecuniary advantage, losses avoided or damage incurred, if determinable, exceeds the amount of the fine referred to in paragraphs 6 or 9 of this Article, the Bank of Lithuania shall impose a fine up to the double amount of the illegally received income, other pecuniary advantage, losses avoided or damage incurred.

9. Where it is difficult or impossible to determine the total annual turnover of a legal person or where the total annual turnover of a legal person is smaller than EUR 1,000,000, instead of the fine referred to in paragraph 6 of this Article, the Bank of Lithuania shall impose on the legal persons a fine of up to EUR 100,000.

10. In the cases referred to in point 2 of paragraph 5 of this Article, the Bank of Lithuania shall impose a fine in the amount of up to 1 per cent of the total annual turnover per each day of the non-fulfilment or improper fulfilment of the mandatory instruction and where it is difficult or impossible to determine the total annual turnover – a fine of up to EUR 1,500.

11. Provisions of Article $43^3$(2)–(13), (15) and (16) and Articles $43^4$, $43^5$, $43^6$ of this Law *mutatis mutandis* shall apply to the decision of the Bank of Lithuania on the application of sanctions, their types, amounts and time limits of their application, the notification of applied sanctions, the right not to apply sanctions, the limitation period of prosecution of a legal person and the collection of fines.

12. The rules of calculation of a fine shall be set forth by legal acts of the Bank of Lithuania.

*Supplemented with the Chapter:*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*

# CHAPTER 8
## FINANCIAL ACCOUNTING AND REPORTING OF THE BANK OF LITHUANIA

### Article 48. The Financial Year of the Bank of Lithuania
The financial year of the Bank of Lithuania shall begin on the first day of January and end on the thirty-first day of December.

### Article 49. Financial Accounting and a Set of Annual Financial Statements
1. The Bank of Lithuania shall manage its financial accounting and prepare a set of annual financial statements (a balance-sheet, profit (loss) statement, and explanatory notes) as well as other financial statements in accordance with the legal acts, guidelines and instructions of the European Central Bank regulating the accounting and reporting of operations undertaken by the national central banks.

2. The annual financial statements of the Bank of Lithuania shall comprise a balance-sheet, profit (loss) statement, and explanatory notes.

3. The Bank of Lithuania shall, within four months after the end of a financial year, submit its annual financial statements together with the opinion of an independent auditor to the Seimas and shall make it public.

*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*

*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1320, 14-04-2011, Official Gazette, 2011, No 46-2159 (16-04-2011)*
*No XI-1319, 14-04-2011, Official Gazette, 2011, No 46-2158 (16-04-2011)*

## Article 50. Audit of the Annual Financial Statements of the Bank of Lithuania

The audit of sets of annual financial statements of the Bank of Lithuania shall be carried out by independent external auditors selected by the Bank of Lithuania and approved by the Council of the European Union upon the recommendation of the European Central Bank.
*Amendments to the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XI-1320, 14-04-2011, Official Gazette, 2011, No 46-2159 (16-04-2011)*
*No XI-1319, 14-04-2011, Official Gazette, 2011, No 46-2158 (16-04-2011)*

## Article 51. Annual Report of the Bank of Lithuania

The Bank of Lithuania shall announce its annual report and issue it as a separate publication. The annual report shall provide information on basic tasks regarding monetary policy and their implementation, monetary policy operations, activities while supervising financial market, conducting macro-prudential policy and discharging other functions established by laws, as well as information on the national macroeconomic situation, such as analysis of the developments in the national economy and financial markets, and on the financial position of the Bank and the results of its activities.
*Amendments to the Article:*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*
*Amendments to the Article:*
*No XII-1097, 18-09-2014, published in the RLA, 23-09-2014, ID code 2014-12712*

## Article 52. Reports by the Chairperson of the Board of the Bank of Lithuania on the Implementation of the Primary Objective

The Chairperson of the Board of the Bank of Lithuania shall twice a year present reports to the Seimas on the implementation of the primary objective of the Bank, the situation of the financial market and the performance of its functions.
*Amendments to the Article:*
*No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)*

## Article 52[1]. Information provided by the Bank of Lithuania to the Seimas of the Republic of Lithuania on the issues of macro-prudential policy

1. Upon a reasoned request of the Seimas Committee on Budget and Finance, the Bank of Lithuania shall submit confidential information about warnings and/or recommendations issued when conducting macro-prudential policy. This information shall be submitted to the extent and in the way which would ensure the protection of confidential information.
2. The Chairperson of the Board of the Bank of Lithuania shall, once a year, and in case of a financial crisis on a more frequent basis, be invited to the hearings of the Seimas Committee on Budget and Finance regarding the macro-prudential policy conducted by the Bank of Lithuania.
3. Where appropriate, the Bank of Lithuania shall submit to the chair of the Seimas Committee on Budget and Finance proposals regarding improvement of laws and other legal acts regulating macro-prudential policy and comments and suggestions on preventive measures in order to reduce the risk of financial system on a macro level.
*Supplemented with the Article:*
*No XII-1097, 18-09-2014, published in the RLA, 23-09-2014, ID code 2014-12712*

## CHAPTER 9
## FINAL PROVISIONS

## Article 53. Recovery of Funds and Securities from Borrowers Failing to Fulfil their

**Obligations**

1. The Bank of Lithuania shall have the right to debit, without an instruction of a financial institution, funds from the accounts of the said financial institution if it fails to fulfil its obligations to the Bank of Lithuania in due time specified in the Bank of Lithuania legal acts and contracts.

2. In the event bankruptcy proceedings are initiated against a financial institution or a decision is made concerning the prohibition to dispose of funds, the Bank of Lithuania shall have the right to use without a decision of the court or any other authorised institution, the funds from the accounts of the financial institutions held at the Bank of Lithuania in order to fulfil its financial obligations to the Bank of Lithuania.

3. In the event that a borrower fails to fulfil its obligations on the date specified in the agreement, and the performance of said obligations has been secured by a financial collateral (collateral), the Bank of Lithuania shall have the right to take over the provided financial collateral (collateral) and realise it in the manner prescribed by legal acts. The Bank of Lithuania may exercise such a right even if bankruptcy proceedings have been initiated against the borrower or a prohibition on the disposal of the financial collateral (collateral) has been imposed.

*Amendments to the Article:*
*No IX-1598, 05-06-2003, Official Gazette, 2003, No 61-2755 (27-06-2003)*
*No IX-2131, 15-04-2004, Official Gazette, 2004, No 61-2187 (2004-04-27)*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

**Article 54. Obtaining and provision of information**

1. State and municipal institutions and economic entities must provide to the Bank of Lithuania all information required for the performance of its functions.

2. The Bank of Lithuania may provide information to the European Central Bank, central banks of the European Union states, international monetary and financial organisations, state and municipal institutions, provided such information is necessary for performing their functions and this Law or other laws of the Republic of Lithuania do not prohibit  the provision of such information. This prohibition shall not apply in cases when statistical information is to be provided to the European Central Bank, in such case confidentiality regime as provided in Article 8 of Council Regulation (EC) No 2533/98 of 23 November 1998 concerning the collection of statistical information by the European Central Bank shall apply.

3. Loans received by legal persons registered in the Register of Legal Entities of the Republic of Lithuania from natural or legal persons without a state guarantee, and the place of residence of these persons or the registered office is located outside the Republic of Lithuania, shall be registered at the Bank of Lithuania in accordance with the procedure established by the Bank of Lithuania.

*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XII-829, 17-04-2014, published in the RLA, 29-04-2014, ID code 2014-04874*

**Article 54[1]. Sanctions for Non-Compliance with Statistical Obligations**

The Bank of Lithuania shall have the right to impose fines and penalties on economic entities for infringements with regard to submission of statistical information as established by the Bank of Lithuania for the performance of the functions of the Bank of Lithuania that are not related to the activities of the European System of Central Banks and also the functions that are related to the activities of the European System of Central Banks, if the procedure of sanctions of the European Central Bank is not applied to such infringements. The size of fines and penalties, arrangements for their application and the terms for the storage of related material shall be determined by the Bank of Lithuania.

*The Law supplemented with the Article:*
*No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)*
*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*

### Article 55. Publication of Information

The Bank of Lithuania shall at least once a month publish statistical and other information.

*Amendments to the Article:*
*No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)*
*No XII-1046, 17-07-2014, published in the RLA, 01-08-2014, ID code 2014-10742*
*Amendments to the Article:*
*No XII-1097, 18-09-2014, published in the RLA, 23-09-2014, ID code 2014-12712*

### Article 56. Aspects of the Formation of the Reserve Capital

When this Law comes into force, the general reserve accumulated by the Bank of Lithuania shall be transferred to the reserve capital.

### Article 57. *Repealed with effect from 01-05-2004*

*Amendments to the Article:*
*No IX-2139, 15-04-2004, Official Gazette, 2004, No 61-2188 (2004-04-27)*

### Article 58. Distribution of the Profit of the Bank of Lithuania Earned in the Year 2000

1. The profit of the Bank of Lithuania earned in the year 2000 shall be distributed in the following manner:
1)   10 per cent – to form the authorised capital of the Bank of Lithuania;
2)   50 per cent – to form the reserve capital of the Bank of Lithuania.
2. The remaining part of the profit shall be paid to the State budget of the Republic of Lithuania by 1 May 2001.

*I promulgate this Law passed by the Seimas of the Republic of Lithuania.*

**PRESIDENT OF THE REPUBLIC**                    **ALGIRDAS BRAZAUSKAS**

Annex 1
to the Law of the Republic of Lithuania
on the Bank of Lithuania

### FINANCIAL MARKET PARTICIPANTS PAYING CONTRIBUTIONS TO COVER EXPENDITURE OF FINANCIAL MARKET SUPERVISION, CONTRIBUTION BASE AND MAXIMUM CONTRIBUTIONS

| Serial No | Market participants | Base of contributions | Maximum contributions |
|---|---|---|---|
| 1. | Credit institutions; branches of foreign banks which are licensed in the states other than the states of the European Economic Area and established in the Republic of Lithuania | Annual average assets | 0.017 % |
| 2. | Branches of foreign banks which are | Annual average | 0.0057 % |

| Serial No | Market participants | Base of contributions | Maximum contributions |
|---|---|---|---|
| | licensed in the states of the European Economic Area and established in the Republic of Lithuania | assets | |
| 3. | Consumer creditors, other than credit institutions and their branches in the Republic of Lithuania | Annual average outstanding amount of granted credits | 0.0085 % |
| 4. | Electronic money institutions; branches of electronic money institutions which are licensed in the states other than the states of the European Economic Area and established in the Republic of Lithuania. | Electronic money issue and/or electronic services provision-related annual income | 0.01 %t |
| 5. | Branches of electronic money institutions which are licensed in the states of the European Economic Area and established in the Republic of Lithuania | Electronic money issue and/or electronic services provision-related annual income | 0.005 % |
| 6. | Payment institutions | Payment services provision-related annual income | 0.01 % |
| 7. | Branches of payment institutions which are licensed in the states of the European Economic Area and established in the Republic of Lithuania | Payment services provision-related annual income | 0.005 % |
| 8. | Insurance and reinsurance companies; branches of insurance and reinsurance companies which are licensed in the states other than the states of the European Economic Area and established in the Republic of Lithuania. | Insurance and reinsurance premiums under contracts concluded in the Republic of Lithuania | 0.26 % |
| 9. | Branches of insurance and reinsurance companies which are licensed in the states of the European Economic Area and established in the Republic of Lithuania | Insurance and reinsurance premiums under contracts concluded in the Republic of Lithuania | 0.13 % |
| 10. | Brokerage firms | Annual income | 0.3 % |
| 11. | Branches of brokerage firms which are licensed in the states other than the states of the European Economic Area and established in the Republic of Lithuania. | Annual income | 0.15 % |
| 12. | Management companies, investment companies whose management is not delegated to management companies, and branches of these entities established in the Republic of Lithuania | Net asset value of managed collective investment undertakings and supplementary voluntary pension funds non-professional investors | 0.05 % |

| Serial No | Market participants | Base of contributions | Maximum contributions |
|---|---|---|---|
| | | Net asset value of managed collective investment undertakings for informed and professional investors | 0.02 % |
| 13. | Operators of the regulated market | – | EUR 21,721 |
| 14. | Central securities depository | – | EUR 28,962 |
| 15. | Issuers whose equity securities are admitted to trading on a regulated market in the Republic of Lithuania and/or in other state of the European Economic Area, and which are under supervision of the Bank of Lithuania | – | **EUR 868** |
| 16. | Issuers whose non-equity securities are admitted to trading on a regulated market in the Republic of Lithuania and/or in other state of the European Economic Area, and which are under supervision of the Bank of Lithuania | – | **EUR 434** |
| 17. | Insurance broker companies | – | EUR 434 |
| 18. | Financial advisor firms | – | EUR 434 |
| 19. | Operators of currency exchange offices | – | EUR 434 |
| 20. | Crowdfunding platform operators | – | EUR 3,000 |
| 21. | Creditors, excluding credit institutions and their branches in the Republic of Lithuania | Annual average outstanding amount of granted credits | 0.0125% |
| 22. | Peer-to-peer lending platform operators | – | EUR 3,000 |
| 23. | Independent credit intermediaries | – | EUR 217 |
| 24. | Independent consumer credit intermediaries | – | EUR 217 |
| 25. | Branch of the Central Securities Depository | – | EUR 15,000 |
| 26. | Tied intermediaries of a financial brokerage firm | – | EUR 217 |
| 27. | Benchmark index operator | – | EUR 217 |
| 28. | Transaction information service providers | – | EUR 217 |
| 29. | Data providers under supervision | – | EUR 217 |
| 30. | National development institutions | – | EUR 2,000 |

*Amendments to the Annex:*
*No XII-1118, 23-09-2014, published in the RLA, 02-10-2014, ID code 2014-13410*
*No XII-2692, 03-11-2016, published in the RLA, 15-11-2016, ID code 2016-26830*
*No XII-2771, 10-11-2016, published in the RLA, 17-11-2016, ID code 2016-26971*
*No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837*
*Amendment to the title of the Annex:*
*No XII-2058, 24-11-2015, published in the RLA, 02-12-2015, ID code 2015-19169*

Annex 2
to the Law of the Republic of Lithuania
on the Bank of Lithuania

**FINANCIAL MARKET PARTICIPANTS PAYING CONTRIBUTIONS TO COVER EXPENDITURE OF THE FINANCIAL SECTOR RESOLUTION AUTHORITY, CONTRIBUTION BASE AND MAXIMUM CONTRIBUTIONS**

| No | Market participants | Contribution base | Maximum contributions |
|---|---|---|---|
| 1. | Banks licensed in the Republic of Lithuania, the Central Credit Union, branches, established in the Republic of Lithuania, of foreign banks licensed in the states other than the countries of the European Economic Area | Annual average assets | 0.0043 % |
| 2. | Branches, established in the Republic of Lithuania, of foreign banks licensed in the states of the European Economic Area | Annual average assets | 0.0014 % |
| 3. | Brokerage firms licensed in the Republic of Lithuania and subject to the requirement of Article $12^1(2)$ of the Law on Markets in Financial Instruments | Annual income | 0.075 % |
| 4. | Branches, established in the Republic of Lithuania, of brokerage firms licensed in other countries | Annual income | 0.038 % |
| 5. | Financial undertakings established in the Republic of Lithuania (except brokerage firms), which are subsidiaries of the entities referred to in points 1 and 3 of this Annex and which are subject to consolidated supervision by parent undertakings under Regulation (EU) No 806/2014: | | |
| 5.1. | Electronic money institutions | Average outstanding electronic money and annual turnover of electronic services | 0.0025 % |
| 5.2. | Payment institutions | Annual turnover of payment services | 0.0013 % |
| 5.3. | Management companies, investment companies with variable capital, closed-end investment companies and branches of these entities established in the Republic of Lithuania | Assets managed by collective investment undertakings and supplementary voluntary pension funds | 0.013 % |
| 5.4. | Financial advisor firms | – | EUR 109 |
| 5.5. | Currency exchange offices' operators | – | EUR 109 |

*Supplemented with the Annex:*
*No XII-2058, 24-11-2015, published in the RLA, 02-12-2015, ID code 2015-19169*

Annex 3
to the Law of the Republic of Lithuania
on the Bank of Lithuania

## IMPLEMENTED LEGAL ACTS OF THE EUROPEAN UNION

1.   Treaty establishing the European Community of 25 March 1957, as last amended by the Lisbon Treaty of 17 December 2007 (OJ 2007 C 306, p. 1).

2.   Protocol No. 18 of 7 February 1992 on the Statute of the European System of Central Banks and of the European Central Bank annexed to the Treaty establishing the European Community, as last amended by the Lisbon Treaty of 17 December 2007 (OJ 2007 C 306, p. 1).

3.   Council Regulation (EC) No. 3603/93 of 13 December 1993 specifying definitions for the application of the prohibitions referred to in Articles 104 and 104b (1) of the Treaty (OJ 2004 special edition, Chapter 10, volume 1, p. 27).

4.   Council Regulation (EC) No. 3604/93 of 13 December 1993 specifying definitions for the application of the prohibition of privileged access referred to in Article 104a of the Treaty (OJ 2004 special edition, Chapter 10, volume 1, p. 30).

5.   Council Regulation (EC) No. 1338/2001 of 28 June 2001 laying down measures necessary for the protection of the euro against counterfeiting (OJ 2004 special edition, Chapter 19, volume 4, p. 152), as last amended by Council Regulation (EC) No. 44/2009 of 18 December 2008 (OJ 2009 L 17, p. 1).

6.   Council Regulation (EC) No. 1339/2001 of 28 June 2001 extending the effects of Regulation (EC) No. 1338/2001 of 28 June 2001 laying down measures necessary for the protection of the euro against counterfeiting to those Member States which have not adopted the euro as their single currency (OJ 2004 special edition, Chapter 19, volume 4, p. 157).

7.   Directive 2002/47/EC of the European Parliament and of the Council of 6 June 2002 on financial collateral arrangements (OJ 2004 *special edition*, Chapter 10, Volume 3, p. 89).

8.   Regulation (EC) No 1060/2009 of the European Parliament and of the Council of 16 September 2009 on credit rating agencies (OJ 2009 L 302, p. 1), with the latest amendments done by Regulation (EU) No 462/2013 of the European Parliament and of the Council of 21 May 2013 (OJ 2013 L 146, p. 1).

9.   Decision ECB/2010/14 of the European Central Bank of 16 September 2010 on the authenticity and fitness checking and recirculation of euro banknotes (OJ 2010 L 267, p. 1), as last amended by Decision of the European Central Bank ECB/2012/19 of 7 September 2012 (OJ 2012 L 253, p. 19).

10. Regulation (EU) No 1210/2010 of the European Parliament and of the Council of 15 December 2010 concerning authentication of euro coins and handling of euro coins unfit for circulation (OJ 2010 L 339, p. 1).

11.   Recommendation of the European Systemic Risk Board of 22 December 2011 on the macro-prudential mandate of national authorities (OJ 2012 C 41, p. 1).

12. Directive 2014/59/EU of the European Parliament and of the Council of 15 May 2014 establishing a framework for the recovery and resolution of credit institutions and investment firms and amending Council Directive 82/891/EEC, and Directives 2001/24/EC, 2002/47/EC, 2004/25/EC, 2005/56/EC, 2007/36/EC, 2011/35/EU, 2012/30/EU and 2013/36/EU, and Regulations (EU) No 1093/2010 and (EU) No 648/2012, of the European Parliament and of the Council (OJ 2014 L 173, p. 1903).

**Amendments:**

1.
Seimas of the Republic of Lithuania, Law
No I-1225, 13-03-96, Official Gazette, 1996, No 30-731
LAW AMENDING AND SUPPLEMENTING THE LAW OF THE REPUBLIC OF LITHUANIA ON THE BANK OF LITHUANIA

2.
Seimas of the Republic of Lithuania, Law
No VIII-179, 08-04-97, Official Gazette, 1997, No 33-812 (18-04-97)
LAW SUPPLEMENTING ARTICLE 44 OF THE LAW OF THE REPUBLIC OF LITHUANIA ON THE BANK OF LITHUANIA

3.
Seimas of the Republic of Lithuania, Law
No VIII-389, 02-07-97, Official Gazette, 1997, No 67-1666 (16-07-97)
LAW AMENDING AND SUPPLEMENTING ARTICLES 11, 43(1) OF THE LAW OF THE REPUBLIC OF LITHUANIA ON THE BANK OF LITHUANIA

4.
Seimas of the Republic of Lithuania, Law
No IX-205, 13-03-2001, Official Gazette, 2001, No 28-890 (30-03-2001)
LAW AMENDING THE LAW ON THE BANK OF LITHUANIA
**Recast Law**

5.
Seimas of the Republic of Lithuania, Law
No IX-1352, 04-03-2003, Official Gazette, 2003, No 27-1079 (19-03-2003)
LAW AMENDING ARTICLE 23 OF THE LAW ON THE BANK OF LITHUANIA
Provisions of this Article shall apply to the distribution of profit of the Bank of Lithuania of 2002 and subsequent years.

6.
Seimas of the Republic of Lithuania, Law
No IX-1465, 03-04-2003, Official Gazette, 2003, No 38-1710 (24-04-2003)
LAW AMENDING ARTICLE 47 OF THE LAW ON THE BANK OF LITHUANIA
This Law shall enter into force together with the Criminal Code of the Republic of Lithuania (Official Gazette, 2000, No 89-2741) and the Code of Criminal Procedure of the Republic of Lithuania (Official Gazette, 2002, No 37-1341), i.e. from 1 May 2003.

7.
Seimas of the Republic of Lithuania, Law
No IX-1598, 05-06-2003, Official Gazette, 2003, No 61-2755 (27-06-2003)
LAW AMENDING ARTICLES 8 AND 53 OF THE LAW ON THE BANK OF LITHUANIA
This Law shall enter into force on 1 July 2003.

8.
Seimas of the Republic of Lithuania, Law
No IX-1998, 05-02-2004, Official Gazette, 2004, No 28-869 (21-02-2004)
LAW AMENDING AND SUPPLEMENTING ARTICLES 1, 3, 6, 7, 10, 11, 12, 14, 16, 17, 18, 19, 20, 21, 23, 24, 37, 49 AND 50 OF THE LAW ON THE BANK OF LITHUANIA, SUPPLEMENTING THE LAW WITH ARTICLES 18(1), 46(1) AND 54(1), AMENDING THE TITLE OF CHAPTER III AND SUPPLEMENTING THE LAW WITH THE ANNEX
This Law shall enter into force on 1 May 2004.

9.
Seimas of the Republic of Lithuania, Law
No IX-2069, 23-03-2004, Official Gazette, 2004, No 54-1830 (15-04-2004)
LAW AMENDING ARTICLES 8, 11, 42, 43, 45, 46 AND 47 OF THE LAW ON THE BANK OF LITHUANIA
This Law shall enter into force on 1 May 2004.

10.

Seimas of the Republic of Lithuania, Law
No IX-2131, 15-04-2004, Official Gazette, 2004, No 61-2187 (27-04-2004)
LAW AMENDING ARTICLE 53 OF THE LAW ON THE BANK OF LITHUANIA
This Law shall enter into force on 1 May 2004

11.
Seimas of the Republic of Lithuania, Law
No IX-2139, 15-04-2004, Official Gazette, 2004, No 61-2188 (27-04-2004)
LAW AMENDING AND SUPPLEMENTING THE LAW ON IMMOVABLE PROPERTY TAX OF ENTERPRISES
AND ORGANISATIONS, THE LAW ON THE FINANCING OF ROAD MAINTENACE AND DEVELOPMENT
PROGRAMME, THE LAW ON THE GUARANTEE FUND, THE LAW ON FEES AND CHARGES, THE LAW ON
FEES FOR REGISTRATION OF INDUSTRIAL OBJECTS, THE LAW ON THE ENVIRONMENTAL POLLUTION
TAX, THE LAW ON THE CONSULAR FEE AND THE LAW ON THE BANK OF LITHUANIA
This Law shall enter into force on 1 May 2004.

12.
Seimas of the Republic of Lithuania, Law
No X-569, 25-04-2006, Official Gazette, 2006, No 48-1699 (29-04-2006)
LAW AMENDING ARTICLES 1, 6, 7, 8, 11, 12, 14, 19, 20, 25, 31, 33, 35, 36, 38, 47, 49, 50, 53, 54, 54(1) AND 55,
AND TITLES OF CHAPTERS IV AND V, REPEALING ARTICLES 26, 27, 28, 29, 30, 32 AND 37 AND
SUPPLEMENTING THE ANNEX TO THE LAW ON THE BANK OF LITHUANIA
This Law, except for Articles 6 and 7, shall enter into force on the date from which the EU Council abrogates
derogation of the Republic of Lithuania according to the procedure referred to in the first sentence of Article 140(1) and
in the first indent of paragraph 2 of the TFEU **(01-01-2015)**
>    **Amendments to this Law:**
>    12.1.
>    Seimas of the Republic of Lithuania, Law
>    No XI-556, 10-12-2009, Official Gazette, 2009, No 153-6894 (28-12-2009)
>    LAW AMENDING ARTICLE 4 AND REPEALING ARTICLE 25 OF THE LAW AMENDING ARTICLES
>    1, 6, 7, 8, 11, 12, 14, 19, 20, 25, 31, 33, 35, 36, 38, 47, 49, 50, 53, 54, 54(1) AND 55 AND TITLES OF
>    CHAPTERS IV AND V, REPEALING ARTICLES 26, 27, 28, 29, 30, 32 AND 37 AND SUPPLEMENTING
>    THE ANNEX TO THE LAW ON THE BANK OF LITHUANIA
>    12.2. **(Amended provision regarding the entry into force of the Law)**
>    Seimas of the Republic of Lithuania, Law
>    No XI-1320, 14-04-2011, Official Gazette, 2011, No 46-2159 (16-04-2011)
>    LAW AMENDING ARTICLES 5, 21, 26, 27 AND 33 OF THE LAW AMENDING ARTICLES 1, 6, 7, 8, 11,
>    12, 14, 19, 20, 25, 31, 33, 35, 36, 38, 47, 49, 50, 53, 54, 54(1) AND 55, AND TITLES OF CHAPTERS IV
>    AND V, REPEALING ARTICLES 26, 27, 28, 29, 30, 32 AND 37 AND SUPPLEMENTING THE ANNEX
>    TO THE LAW ON THE BANK OF LITHUANIA
>    12.3.
>    Seimas of the Republic of Lithuania, Law
>    No XI-1667, 17-11-2011, Official Gazette, 2011, No 145-6813 (01-12-2011)
>    LAW AMENDING ARTICLES 2, 3, 4, 5, 11 AND 32 OF THE LAW AMENDING ARTICLES 1, 6, 7, 8, 11,
>    12, 14, 19, 20, 25, 31, 33, 35, 36, 38, 47, 49, 50, 53, 54, 54(1) AND 55, AND TITLES OF CHAPTERS IV
>    AND V, REPEALING ARTICLES 26, 27, 28, 29, 30, 32 AND 37 AND SUPPLEMENTING THE ANNEX
>    TO THE LAW ON THE BANK OF LITHUANIA
>    This Law shall enter into force on 1 January 2012
>    12.4.
>    Seimas of the Republic of Lithuania, Law
>    No XII-765, 23-01-2014, published in the RLA, 30-01-2014, ID code 2014-00713
>    LAW AMENDING ARTICLE 1 OF THE LAW NO X-569 AMENDING ARTICLES 2, 3, 4, 5, 11 AND 32
>    OF THE LAW AMENDING ARTICLES 1, 6, 7, 8, 11, 12, 14, 19, 20, 25, 31, 33, 35, 36, 38, 47, 49, 50, 53,
>    54, 54(1) AND 55, AND TITLES OF CHAPTERS IV AND V, REPEALING ARTICLES 26, 27, 28, 29, 30,
>    32 AND 37 AND SUPPLEMENTING THE ANNEX TO THE LAW ON THE BANK OF LITHUANIA
>    12.5.
>    Seimas of the Republic of Lithuania, Law
>    No XII-829, 17-04-2014, published in the RLA, 29-04-2014, ID code 2014-04874
>    LAW AMENDING ARTICLE 29 OF THE LAW NO X-569 AMENDING ARTICLES 2, 3, 4, 5, 11 AND 32
>    OF THE LAW AMENDING ARTICLES 1, 6, 7, 8, 11, 12, 14, 19, 20, 25, 31, 33, 35, 36, 38, 47, 49, 50, 53,
>    54, 54(1) AND 55, AND TITLES OF CHAPTERS IV AND V, REPEALING ARTICLES 26, 27, 28, 29, 30,
>    32 AND 37 AND SUPPLEMENTING THE ANNEX TO THE LAW ON THE BANK OF LITHUANIA
>    12.6.
>    Seimas of the Republic of Lithuania, Law

No XII-1046, 17-07-2014, published in the RLA, 01-08-2014, ID code 2014-10742
LAW AMENDING ARTICLES 4, 5 AND 32 AND REPEALING ARTICLE 31 OF THE LAW NO X-569
AMENDING ARTICLES 2, 3, 4, 5, 11 AND 32 OF THE LAW AMENDING ARTICLES 1, 6, 7, 8, 11, 12,
14, 19, 20, 25, 31, 33, 35, 36, 38, 47, 49, 50, 53, 54, 54(1) AND 55, AND TITLES OF CHAPTERS IV AND
V, REPEALING ARTICLES 26, 27, 28, 29, 30, 32 AND 37 AND SUPPLEMENTING THE ANNEX TO
THE LAW ON THE BANK OF LITHUANIA

13.
Seimas of the Republic of Lithuania, Law
No XI-202, 19-03-2009, Official Gazette, 2009, No 38-1441 (04-04-2009)
LAW AMENDING ARTICLE 11 OF THE LAW ON THE BANK OF LITHUANIA

14.
Seimas of the Republic of Lithuania, Law
No XI-510, 02-12-2009, Official Gazette, 2009, No 147-6553 (12-12-2009)
LAW AMENDING ARTICLE 23 OF THE LAW ON THE BANK OF LITHUANIA

15.
Seimas of the Republic of Lithuania, Law
No XI-557, 10-12-2009, Official Gazette, 2009, No 153-6895 (28-12-2009)
LAW AMENDING ARTICLES 8, 11, 43, 44, 45, 46, 46(1) AND 47, THE TITLE OF CHAPTER VII AND
REPEALING ARTICLE 42 OF THE LAW ON THE BANK OF LITHUANIA

16.
Seimas of the Republic of Lithuania, Law
No XI-1118, 12-11-2010, Official Gazette, 2010, No 139-7102 (27-11-2010)
LAW AMENDING ARTICLE 17 OF THE LAW ON THE BANK OF LITHUANIA

17.
Seimas of the Republic of Lithuania, Law
No XI-1319, 14-04-2011, Official Gazette, 2011, No 46-2158 (16-04-2011)
LAW AMENDING ARTICLES 10, 11, 16, 17, 35, 49 AND 50 OF THE LAW ON THE BANK OF LITHUANIA
Articles 1 and 3 of this Law shall apply to Deputy Chairpersons and Members of the Board of the Bank of Lithuania
appointed after the entry into force of this Law; provisions of paragraphs 3 and 4 of Articles 1 and 3 of this Law shall
apply to the Chairperson of the Board of the Bank of Lithuania who commences his term of office on the date of entry
into force of this Law and afterwards.

18.
Seimas of the Republic of Lithuania, Law
No XI-1666, 17-11-2011, Official Gazette, 2011, No 145-6812 (01-12-2011)
LAW AMENDING AND SUPPLEMENTING ARTICLES 3, 6, 8, 11, 12, 41, 51 AND 52, CHAPTER VII AND
ANNEX TO THE LAW ON THE BANK OF LITHUANIA AND SUPPLEMENTING THE LAW ON THE BANK OF
LITHUANIA WITH CHAPTER VII(1) AND NEW ANNEX 1
This Law shall enter into force on 1 January 2012

19.
Seimas of the Republic of Lithuania, Law
No XI-1800, 15-12-2011, Official Gazette, 2011, No 160-7567 (28-12-2011)
LAW AMENDING ARTICLE 23 OF THE LAW ON THE BANK OF LITHUANIA
Provisions of Article 23 of the Law on the Bank of Lithuania amended by Article 1 of this Law shall apply in
distributing (covering) the distributable profit (loss) of the Bank of Lithuania of 2012 and subsequent financial years.
After approval of the set of financial statements of the Bank of Lithuania for 2011, a part of the contribution from profit
of the Bank of Lithuania of 2011 which will be allocated for payment into the State Budget in 2012, by decision of the
Bank of Lithuania may be deferred and earmarked for ensuring the compensation for market value  of the immovable
property no longer used by the Bank of Lithuania and recognised by decision of the Board of the Bank of Lithuania as
unnecessary and planned to be transferred to the SE State Property Fund and/or other public authorities in accordance
with the procedure established by laws of the Republic of Lithuania. This deferred profit contribution amount shall be
equal to the market value of the transferrable assets of the Bank of Lithuania determined by valuation of the assets in
observance of provisions of the Law of the Republic of Lithuania on the Bases of Property and Business Valuation. 
This deferred amount shall be recognised in revenues of the Bank of Lithuania of 2012 concurrently with the transfer of
the assets to the SE State Property Fund and/or other public authorities.
Provisions of paragraph 2 of this Article shall apply only if when distributing the profit of 2011 of the Bank of
Lithuania the amount of the contribution from the profit of the Bank of Lithuania paid into the State Budget is sufficient

for compensating the market value of the immovable property no longer used by the Bank of Lithuania and recognised by decision of the Board of the Bank of Lithuania as unnecessary and planned to be transferred to the SE State Property Fund and/or other public authorities in accordance with the procedure established by laws of the Republic of Lithuania. This Law shall enter into force on 1 January 2012

20.
Seimas of the Republic of Lithuania, Law
No XII-764, 23-01-2014, published in the RLA, 30-01-2014, ID code 2014-00716
LAW AMENDING ARTICLE OF LAW NO I-678 ON THE BANK OF LITHUANIA
On the date of entry into force of this Law, the state-owned assets managed by the Bank of Lithuania transferred to the Bank of Lithuania for management, use and disposal by trust and recorded in the balance sheet and off-balance sheet accounting of the Bank of Lithuania shall belong to the Bank of Lithuania by right of ownership as from the date of entry into force of this Law.

21.
Seimas of the Republic of Lithuania, Law
No XII-1035, 17-07-2014, published in the RLA, 04-08-2014, ID code 2014-10871
LAW AMENDING ARTICLE 42 OF AND ANNEX 1 TO LAW NO I-678 ON THE BANK OF LITHUANIA
This Law shall enter into force on 1 November 2014

**Amendments:**

1.
Seimas of the Republic of Lithuania, Law
No XII-1046, 17-07-2014, published in the RLA, 01-08-2014, ID code 2014-10742
Law amending Articles 4, 5 and 32 and repealing Article 31 of Law No X-569 amending Articles 1, 6, 7, 8, 11, 12, 14, 19, 20, 25, 31, 33, 35, 36, 38, 47, 49, 50, 53, 54, 54-1 and 55, titles of Chapters IV and V, repealing Articles 26, 27, 28, 29, 30, 32 and 37 of the Law on the Bank of Lithuania

2.
Seimas of the Republic of Lithuania, Law
No XII-1097, 18-09-2014, published in the RLA, 23-09-2014, ID code 2014-12712
Law amending Articles 8, 11, 27, 51 and 55 of and Annex 2 to Law No I-678 of the Republic of Lithuania on the Bank of Lithuania and supplementing the Law with Chapter VII-2 and Chapter 52-1

3.
Seimas of the Republic of Lithuania, Law
No XII-1118, 23-09-2014, published in the RLA, 02-10-2014, ID code 2014-13410
Law amending Annex 1 to Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

4.
Seimas of the Republic of Lithuania, Law
No XII-1473, 18-12-2014, published in the RLA, 31-12-2014, ID code 2014-21134
Law amending Chapter 42 of and Annex 2 to Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

5.
Seimas of the Republic of Lithuania, Law
No XII-1691, 14-05-2015, published in the RLA 20-05-2015, ID code 2015-07667
Law amending Articles 8, 11, 42, 43 and 44 of Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

6.
Seimas of the Republic of Lithuania, Law
No XII-2058, 24-11-2015, published in the RLA, 02-12-2015, ID code 2015-19169
Law amending Articles 1, 8, 11, 45 and Annexes 1 and 2, repealing Article 44 of Law No I-678 of the Republic of Lithuania on the Bank of Lithuania and supplementing the Law with Article 21-1 and new Annex 2

7.
Seimas of the Republic of Lithuania, Law
No XII-2075, 26-11-2015, published in the RLA, 03-12-2015, ID code 2015-19283
Law amending Article 42 of Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

8.

Seimas of the Republic of Lithuania, Law
No XII-2088, 26-11-2015, published in the RLA, 07-12-2015, ID code 2015-19366
Law amending Article 47 of Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

9.
Seimas of the Republic of Lithuania, Law
No XII-2562, 30-06-2016, published in the RLA, 13-07-2016, ID code 2016-20316
Law amending Article 47 of Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

10.
Seimas of the Republic of Lithuania, Law
No XII-2692, 03-11-2016, published in the RLA, 15-11-2016, ID code 2016-26830
Law amending Article 42 of and Annex 1 to Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

11.
Seimas of the Republic of Lithuania, Law
No XII-2450, 16-06-2016, published in the RLA, 27-06-2016, ID code 2016-17718
Law amending Article 45 of Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

12.
Seimas of the Republic of Lithuania, Law
No XII-2771, 10-11-2016, published in the RLA, 17-11-2016, ID code 2016-26971
Law amending Article 42 of and Annex 1 to Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

13.
Seimas of the Republic of Lithuania, Law
No XIII-580, 30-06-2017, published in the RLA, 11-07-2017, ID code 2017-11950
Law amending Article 42 of Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

14.
Seimas of the Republic of Lithuania, Law
No XIII-1147, 15-05-2018, published in the RLA, 23-05-2018, ID code 2018-08262
Law amending Article 47 of Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

15.
Seimas of the Republic of Lithuania, Law
No XIII-1231, 05-06-2018, published in the RLA, 14-06-2018, ID code 2018-09837
Law amending Articles 2, 6, 8, 11, 21-1, 42, 43, 47 of and Annexes 1 and 3 to Law No I-678 of the Republic of Lithuania on the Bank of Lithuania and supplementing the Law with Articles 17-1, 42-1, 43-1, 43-2, 43-3, 43-4, 43-5, 43-6, 43-7 and Chapter VII-3

16.
Seimas of the Republic of Lithuania, Law
No XIII-1095, 17-04-2018, published in the RLA, 27-04-2018, ID code 2018-06731
Law amending Article 47 of and Annex 1 to Law No I-678 of the Republic of Lithuania on the Bank of Lithuania

17.
Seimas of the Republic of Lithuania, Law
No XIII-1304, 2018-06-27, published in the RLA 2018-07-04, ID code 2018-11309
Law amending Article 1 and repealing Article of Law No XIII-1095 amending Article 47 of and Annex 1 to Law No I-678 of the Republic of Lithuania on the Bank of Lithuania