UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re the Application of the Fund for Protection of Investor Rights in Foreign States pursuant to 28 U.S.C. § 1782 for an Order Granting Leave to Obtain Discovery for Use in a Foreign Proceeding.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: 7/8/2020

19 Misc. 401 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Before the Court is an application under 28 U.S.C. § 1782 seeking leave to obtain discovery to be used in an international arbitration proceeding, brought by Applicant, The Fund for Protection of Investor Rights in Foreign States, a corporation organized under Russian law. ECF No. 1. The targets of Applicant's discovery requests, Simon Freakley and AlixPartners, LLP, oppose the application. Opp., ECF No. 18. For the reasons below, the application is GRANTED.

**BACKGROUND**

Applicant is the claimant in an ongoing international arbitration initiated against the Republic of Lithuania (the "Arbitration"), arising out of Lithuania's nationalization of a bank, AB bankas SNORAS ("Snoras"). Notice of Arbitration, ECF No. 3-1. Applicant claims, among other things, that in 2011 Lithuania's regulatory authorities conducted an investigation of Snoras, announced that the bank was unable to meet its obligations, and appointed Simon Freakley as temporary administrator of the bank. *Id.* ¶¶ 24, 29–33. Applicant further claims that the Lithuanian government directed Freakley to complete his report on a sharply abbreviated timeline, that he submitted a report finding that Snoras' net asset value was lower than the value of its liabilities, and that on the same day as the report was submitted, Lithuanian regulatory authorities revoked Snoras' license and commenced bankruptcy proceedings, which led promptly

to a Lithuanian court declaring Snoras to be bankrupt. *Id.* ¶¶ 37–40. Applicant alleges that it was assigned any claims arising out of these events. *Id.* ¶ 45.

Applicant commenced the Arbitration on April 29, 2019, pursuant to a treaty titled the Agreement Between the Government of the Russian Federation and the Government of the Republic of Lithuania on the Promotion and Reciprocal Protection of the Investments (the "Treaty"). *Id.* ¶ 2. The Treaty provides that when an investor has a dispute with a state that is a party to the Treaty, the investor may (after following required procedures) bring the dispute before "an ad hoc arbitration in accordance with Arbitration Rules of the United Nations Commission on International Trade Law" ("UNCITRAL"). *Id.* ¶ 63.

As of October 15, 2019, Applicant and Lithuania had each selected a member of the three-member arbitral tribunal (the "Tribunal"), and were negotiating regarding the third arbitrator. Yanos Decl. ¶ 2, 22. On December 18, 2019, the fully constituted Tribunal denied a request by Lithuania to bar Applicant from pursuing this proceeding. *See* Arbitral Order, Applicant Supp. Ltr. Ann. A., ECF No. 24 at 3–12.

**DISCUSSION**

I. Legal Standard

28 U.S.C. § 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."

"A district court has authority to grant a § 1782 application where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or

international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (internal quotation marks, citation, and alterations omitted).

If those factors are met, the district court may authorize discovery in its discretion. In exercising its discretion, the court must consider four factors laid out by the Supreme Court in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004):

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent";
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
> (4) whether the request is "unduly intrusive or burdensome."

*Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264–65).

## II. Analysis

Applicant seeks to require Freakley and AlixPartners to produce documents relating to the circumstances of Freakley's appointment as Snoras' temporary administrator and the instructions he received from the Lithuanian government; the nature, scope, and findings of his investigation of Snoras; the "reception" of those findings by the Bank of Lithuania and other Lithuanian officials; and any and all reports prepared by Freakley and his team for the Bank of Lithuania. App. Mem. at 9–10, ECF No. 2. Applicant also seeks to depose Freakley and a representative of AlixPartners designated pursuant to Federal Rule of Civil Procedure 30(b)(6) about these events. *Id.*

The Court first addresses the statutory requirements, and then turns to the *Intel* factors.

A. Statutory Requirements

All three of the statutory requirements of § 1782(a) are met. First, AlixPartners and Freakley do not contest that they can be "found" in this district. *See* ECF No. 3-2 (indicating that AlixPartners' headquarters is in Manhattan); ECF No. 3-4 (indicating the Freakley works as chief executive officer of AlixPartners in New York City); Opp. at 7 (arguing only that the application does not meet the second and third statutory requirements).

Second, the discovery sought is "for use in a foreign proceeding before a foreign or international tribunal." To be "for use" in a proceeding, information sought need only be "something that will be employed with some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 298. Documents and testimony from AlixPartners and Freakley related to Freakley's position as temporary administrator of Snoras could assist Applicant in challenging the process that led to Snoras' nationalization and bankruptcy. AlixPartners and Freakley argue that the discovery is nonetheless not "for use" in a foreign proceeding before a foreign or international tribunal for two reasons: (1) no proceeding is within reasonable contemplation, because the Arbitration is in its preliminary stages, and (2) the Arbitration is not a "foreign or international tribunal" within the meaning of § 1782(a). Opp. at 7–12.

Neither argument has merit. A proceeding is not only contemplated, but actual: Applicant has initiated the Arbitration, and put at issue claims that plainly implicate the discovery it seeks. *See* Notice of Arbitration. And the Arbitration has several characteristics that indicate it should be treated as an international tribunal: it was convened under the authority of the Treaty, a bilateral agreement between the Republic of Lithuania and the Russian Federation; Applicant seeks to enforce rights established by that treaty against Lithuania as a state; and the

Arbitration will be conducted pursuant to UNCITRAL rules. *See In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) (holding that an arbitral tribunal "established by an international treaty," and conducted "pursuant to UNCITRAL rules," constituted a foreign tribunal); *see also OJSC Ukrnafta v. Carpatsky Petroleum Corp.,* No. 3:09 Misc. 265, 2009 WL 2877156, at *4 (D. Conn. Aug. 27, 2009) (holding that § 1782's reference to foreign or international tribunals "at minimum, . . . include[s] international-government sanctioned tribunals."); *cf. Chevron Corp. v. Berlinger*, 629 F.3d 297, 310 (2d Cir. 2011) (expressly reserving the question of whether a "treaty arbitration between Chevron and Ecuador is . . . a proceeding in a foreign or international tribunal within the meaning of § 1782" (internal quotation marks and citation omitted)).[1]

Third, Applicant is the complaining party in the Arbitration, and falls squarely within the category of an "interested person." "No doubt litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782." *Intel*, 542 U.S. at 256 (internal quotation marks and citation omitted). AlixPartners and Freakley claim that Applicant may not have standing to prosecute, or may not have properly been assigned, the claims it is asserting in the Arbitration. Opp. at 12–13. But that issue is not before this Court. As a matter of fact, Applicant is currently a party to the Arbitration, and is, therefore, an interested person for purposes of § 1782.

[1] AlixPartners and Freakley argue that in *National Broadcasting Co. v. Bear Stearns & Co.*, the Second Circuit held that "Congress did not intend for [§ 1782] to apply to an arbitral body established by private parties." 165 F.3d 184, 191 (2d Cir. 1999); *see* Opp. at 10–12. The Second Circuit noted, however, that § 1782 did apply to arbitral tribunals "created by intergovernmental agreement." *Nat'l Broadcasting*, 165 F.3d at 190. The Court concludes that the Arbitration, which was created by treaty and designed to structure relations between two sovereign nations, falls into that category.

Accordingly, the Court holds that it has authority under § 1782 to order the discovery sought by Applicant.

B. *Intel* Factors

The factors laid down by the Supreme Court to guide a district court's discretion also favor granting Applicant's request for discovery.

First, AlixPartners and Freakley are not participants in the Arbitration. This factor, therefore, weighs in favor of granting the request.

Second, there is no reason to doubt that the Tribunal would be receptive to U.S. federal-court judicial assistance. Absent "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," a court should allow discovery if doing so would further § 1782's "overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (internal quotation marks and citation omitted). Here, the Tribunal has already declined to bar Applicant from seeking discovery in this proceeding. *See* Arbitral Order ¶ 24. The Tribunal did not address the question of whether any evidence obtained would ultimately be admissible in the Arbitration, or otherwise pass on the merits of this application, but its decision not to preclude Applicant from pursuing this proceeding indicates that the Court need not weigh "heavily" any "concern for trespassing upon the prerogatives of [another jurisdiction's] sovereignty." *Euromepa*, 51 F.3d at 1101.

Third, granting Applicant's request will not allow circumvention of foreign proof-gathering restrictions or other policies. AlixPartners and Freakley argue that Lithuanian bank secrecy law would prevent disclosure of the information sought, Opp. at 16–17; Applicant

disputes that contention, Reply at 10–12, ECF No. 21.  The Court need not resolve that issue.  The question under the third *Intel* factor is whether Applicant seeks to obtain discovery "in contravention of restrictions in place *in the foreign proceedings*."  *In re del Valle Ruiz*, 939 F.3d 520, 534 (2d Cir. 2019) (emphasis added).  The laws on which AlixPartners and Freakley rely may regulate conduct in Lithuania and govern proceedings there, but Applicant seeks discovery for use in an international proceeding, with its own rules governing discovery and admissibility of evidence.  *See generally* UNCITRAL Arbitration Rules, ECF No. 3-15.  There is no evidence before the Court that the Arbitration's rules would prohibit Applicant's acquisition or use of the information sought.  *See Mees*, 793 F.3d at 303 n.20 ("Proof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." (internal quotation marks and citation omitted)).  Of course, § 1782(a) provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  To the extent that AlixPartners and Freakley believe that Lithuanian law applies in this proceeding to prevent them from disclosing certain documents, they can seek a protective order or otherwise raise objections to the relevant portion of Applicant's discovery requests.

Fourth, and finally, Applicant's request is not unduly intrusive or burdensome.  "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302.  Applicant's requests go to the heart of their

case in the Arbitration, and appear to be proportionate to their needs. *See* ECF Nos. 3-11, 3-12, 3-13, 3-14. Moreover, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302 (internal quotation marks and citation omitted). AlixPartners and Freakley may apply to this Court for a protective order or for other relief as necessary to appropriately limit discovery, consistent with the Federal Rules of Civil Procedure. *See In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 252 (2d Cir. 2019) ("[T]he district court did not abuse its discretion by concluding that [p]etitioners' requests would not be unduly burdensome and that, if issues arose, they could be resolved through a protective order."). On their face, however, the proposed subpoenas do not appear so intrusive or burdensome as to justify denial of the application under § 1782's liberal standard.

Accordingly, the Court holds that it should exercise its discretion to permit the discovery sought by Applicant.

**CONCLUSION**

For the reasons stated, the application pursuant to § 1782 is GRANTED. It is ORDERED that Applicant may issue subpoenas for documents in substantially the same form as Exhibits 11, 12, 13, and 14 to Alexander Yanos' declaration filed in support of the application. ECF Nos. 3-11, 3-12, 3-13, 3-14.

The Clerk of Court is directed to terminate the motion at ECF No. 1, and close the case.

SO ORDERED.

Dated: July 8, 2020
New York, New York

ANALISA TORRES
United States District Judge