UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of the Fund for Protection of Investor Rights in Foreign States pursuant to 28 U.S.C. § 1782 for an Order Granting Leave to Obtain Discovery for Use in a Foreign Proceeding | 19 Misc. 00401 (AT) |

# ALIXPARTNERS LLP AND SIMON FREAKLEY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR RECONSIDERATION AND A STAY

**WILLKIE FARR & GALLAGHER LLP**

Joseph T. Baio
Stuart R. Lombardi
Jordan C. Wall
Samantha G. Prince
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Respondents AlixPartners LLP and Mr. Simon Freakley*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.   RECONSIDERATION SHOULD BE GRANTED, AND THE APPLICATION DENIED ...........................................................................................................................2

    A.   The Fund Mischaracterizes The Standard For Reconsideration, But In All Events, Reconsideration Is Appropriate ................................................................2

    B.   Application of *In re Guo* Would "Alter The Conclusion Reached By The Court." ...................................................................................................................4

        1.   The Fund incorrectly argues that *In re Guo* does not apply to "treaty-based arbitration," and then fails to rebut any of Respondents' arguments on the application of *In re Guo*'s holdings or multifactor test. ...................................................................................................................4

        2.   The Fund's few substantive arguments do not alter that the Arbitration is more akin to a private international commercial arbitration. ...................6

II.  A STAY IS WARRANTED. ................................................................................................7

CONCLUSION ................................................................................................................................9

## TABLE OF AUTHORITIES

**Case**                                                   **Page(s)**

*Chevron Corp. v. Berlinger*,
    629 F.3d 297 (2d Cir. 2011) ............................................................................................. 5

*In re del Valle Ruiz*,
    342 F. Supp. 3d 448 (S.D.N.Y. 2018),
    *aff'd, In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ...................................................... 7

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ............................................................................................. 8

*In re Application of Hanwei Guo for an Order to Take Discovery for Use in a Foreign
    Proceeding Pursuant to 28 U.S.C. § 1782*,
    No. 19-0781 (2d Cir. July 8, 2020) ............................................................................. 1, 3

*In re Gushlak*,
    \No. 11-MC-0218 (NGG) (JO), 2012 U.S. Dist. LEXIS 60349 (E.D.N.Y. Jan. 30, 2012),
    *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 60342
    (E.D.N.Y. Apr. 30, 2012) .................................................................................................. 8

*Kolel Beth Yechiel of Tartikov, Inc. v. YLL Irrevocable Tr.*,
    729 F.3d 99 (2d Cir. 2013) ............................................................................................... 7

*In re Platinum Partners Value Arbitrage Fund L.P.*,
    No. 18-CV-5176 (DLC), 2018 U.S. Dist. LEXIS 109684 (S.D.N.Y. June 29, 2018) ......... 8

*Republic of Kazakhstan v. Biedermann, Int'l*,
    168 F.3d 880 (5th Cir. 1999) ........................................................................................... 8

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ........................................................................................... 2, 7

*Sutherland v. Ernst &Young LLP*,
    856 F. Supp. 2d 638 (S.D.N.Y. 2012) ............................................................................. 7

*Taylor v. Vt. Dep't of Educ.*,
    313 F.3d 768 (2d Cir. 2002) ............................................................................................ 3

*United States v. Plugh*,
    648 F.3d 118 (2d Cir. 2011) ........................................................................................ 2, 3

*Wojchowski v. Daines*,
    498 F.3d 99 (2d Cir. 2007) ............................................................................................... 3

**Statues, Rules and Regulations**

Fed. R. App. P. 4(a)(4)(A) ......................................................................................................... 9

Fed. R. App. P. 4(a)(4)(B)(i) ...................................................................................................... 9

AlixPartners LLP and Mr. Simon Freakley ("**Respondents**") respectfully submit this reply in further support of their July 22, 2020 motion [ECF No. 28]¹ (the "**Motion**") for and opening brief [ECF No. 29] (the "**Brief**") in support of reconsideration and a stay of this Court's July 8, 2020 Order [ECF No. 27] (the "**Order**") granting the *ex parte* application pursuant to 28 U.S.C. § 1782 (the "**Application**") filed by The Fund for Protection of Investor Rights in Foreign States (the "**Fund**").²

## PRELIMINARY STATEMENT

The Fund argues that reconsideration is not warranted because the decision in *In re Guo* is not an intervening change in controlling law. That is wrong. *In re Guo* resolved an intra-Circuit split over *National Broadcasting Co. v. Bear Stearns & Co.*, 165 F.3d 184 (2d Cir. 1999) ("*NBC*") and identified a new multifactor test based on U.S. Supreme Court's ruling in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*"). Even if *In re Guo* did not constitute an intervening change of controlling law, it would amount to clear error and work a manifest injustice upon Respondents to ignore the Second Circuit's recent decision, an equal ground for reconsideration. (Opposition to Motion for Reconsideration and Stay [ECF No. 30] (Aug. 5, 2020) ("**Opposition**" or "**Opp.**") at 3.)

The Opposition fails to address the factor-by-factor analysis set out in *In re Guo,* including the "range of factors" that courts in this Circuit must now weigh when assessing whether the discovery sought is in aid of a proceeding before a "foreign or international tribunal." (*In re Guo*, No. 19-781, slip op. at 4, 21) Rather, in an attempt to avoid *In re Guo* entirely, the Fund mischaracterizes a single footnote there to argue that the Second Circuit's

---

¹ Citations to "ECF" are to the docket in this action.
² Capitalized terms not otherwise defined herein shall have the same meaning as such identical, capitalized terms found in Respondents' Motion and Brief.

1

"decision did not apply to treaty-based arbitration of investor-state disputes." (Opp. at 5 (quoting *In re Guo*, No. 19-781, slip op. at 24 n.7).) That is incorrect. *In re Guo* clearly applies to all Section 1782 applications.

Finally, a stay pending resolution of the Motion is more than warranted. A stay ultimately costs the Fund little, yet protects the Respondents from substantial burden and prejudice.

## ARGUMENT

I. **RECONSIDERATION SHOULD BE GRANTED, AND THE APPLICATION DENIED.**

    A. **The Fund Mischaracterizes The Standard For Reconsideration, But In All Events, Reconsideration Is Appropriate.**

The Fund initially identified the proper standard for reconsideration: "Reconsideration is warranted only where the movant 'identifies an intervening change of controlling law, the availability of new evidence, **or the need to correct a clear error or prevent manifest injustice**.'" (Opp. at 3 (citing *Kolel Beth Yechiel of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (emphasis added)).) The Fund then ignores the last part of that standard, arguing that reconsideration is not warranted **unless** *In re Guo* constitutes an intervening change of controlling law. (*See* Opp. at 4.) In fact, *In re Guo* established both an intervening change of controlling law and a standard for relief under Section 1782 that renders reliance solely on prior precedent clearly erroneous. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that reconsideration is appropriate where the "moving party can point to controlling decisions or data that the court overlooked" and affirming grant of reconsideration where movant introduced "additional relevant case law").

A case that "clarifie[s] and alter[s] the [] standard prevailing in this Circuit at the time it was decided" constitutes an "intervening change of controlling law." *See United States v. Plugh*,

2

648 F.3d 118, 124 (2d Cir. 2011).  That intervening case need not address the specific question at issue to constitute a change of controlling law.  *Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007) ("[T]he intervening decision need not address the precise issue already decided by our Court" (quoting *Union Needletrades, Indus. & Textile Employees v. U.S. Immigration & Naturalization Serv.*, 336 F.3d 200, 210 (2d Cir. 2003))); *see Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 783-86 (2d Cir. 2002) (recognizing intervening U.S. Supreme Court decision as a change in the controlling law, and overruling prior controlling Circuit precedent, despite the Supreme Court decision and prior precedent addressing different sections of the statute at issue). Further, that intervening case's impact on prior precedent may seem "subtle," but could nevertheless constitute a change of controlling law.  *See Wojchowski*, 498 F.3d at 109 ("[A]lthough *Keffeler's* effect on our Court's precedent may be 'subtl[e],' it is nevertheless fundamental and requires us to hold that *Robbins* is no longer good law.")

Based on this precedent, *In re Guo* both clarified and altered this Circuit's prior precedent in *NBC* by resolving an intra-Circuit split over its continued application post-*Intel*.  (*In re Guo*, slip op. at 15-20.)  *In re Guo* also expanded the Second Circuit's holdings in *NBC* by adopting the functional approach taken in *Intel* and identifying a multifactor test to analyze whether a foreign proceeding is one before a "foreign or international tribunal" for Section 1782 purposes. (*Id.* at 20-26.)   Respondents respectfully submit that *In re Guo*'s impact on this Circuit's prior precedent represents a fundamental restatement and expansion of the holdings in *NBC*.

At bottom, whether *In re Guo* constituted a change in controlling law or merely affirmed and clarified *NBC,* is an academic point.  Because *In re Guo* is controlling precedent, reconsideration is appropriate either because it constitutes an intervening change of controlling

3

law, or because the multifactor test it identified was not utilized, it would amount to a clear error of law, and work a manifest injustice upon Respondents, to ignore its holdings.[3]

> **B.     Application of *In re Guo* Would "Alter The Conclusion Reached By The Court."**
>
> > **1. The Fund incorrectly argues that *In re Guo* does not apply to "treaty-based arbitration," and then fails to rebut any of Respondents' arguments on the application of *In re Guo*'s holdings or multifactor test.**

As the Fund admits, reconsideration is warranted if the matter is reasonably "'expected to alter the conclusion reached by the court.'"  (Opp. at 3 (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)).)  Rather than substantively address *In re Guo*, the Fund instead seeks to circumvent it, arguing that nothing in the Second Circuit's decision applies to "treaty-based arbitration of investor-state disputes." (Opp. at 5.)  The Fund's only support for this argument is footnote 7 in *In re Guo*.  In that footnote, the Court noted "an arbitral body under a bilateral investment treaty ***may be*** a 'foreign or international tribunal,'" (Opp. at 5 (quoting *In re Guo*, slip op. at 24 n.7 (emphasis added))).  Applicant argues that this must mean that ***all*** arbitral bodies created to address bilateral investment treaties claims qualify as "foreign or international tribunals" for Section 1782 purposes, and that *In re Guo* carved out such proceedings from its holding.

But, as a matter of simple logic, the fact that ***some*** arbitral bodies established under a bilateral investment treaty may be qualifying tribunals does not mean that ***all*** such bodies are. Indeed, precedent has established that some such bodies have not been found to be qualifying

---

[3]     The Fund's argument is also a total about-face.  In its prior briefing, the Fund attempted to distinguish the Second Circuit's decision in *NBC* and argued that "many courts . . . have concluded that *NBC*'s holding with respect to Section 1782 and private, contractually-based arbitrations is no longer good law following the Supreme Court's decision in *Intel*[.]"  (Reply In Further Support of *Ex Parte* Motion, [ECF No. 21] (Oct. 15, 2019) at 10–11.)  But now the Fund argues that *In re Guo*'s threshold ruling—"that *NBC* remains binding law in this Circuit" (slip op. at 15)—is not an "intervening change of controlling law."  (Opp. at 4.)  Although the Fund's error as to the precedential value of *NBC* is not dispositive of whether *In re Guo* is or is not controlling law.

4

tribunals. *Chevron Corp. v. Berlinger*, 629 F.3d 297, 310 (2d Cir. 2011) (declining to decide whether arbitration before the Hague pursuant to the U.S.-Ecuador BIT, and adopting UNCITRAL rules, was a foreign tribunal); *see also Republic of Kazakhstan v. Biedermann, Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) (finding arbitration against Kazakhstan pursuant to bilateral investment treaty private and citing the Second Circuit's analysis in *NBC*). *In re Guo* clearly applies to all Section 1782 applications in this Circuit, and its multifactor test must be utilized when determining whether a proceeding is before a "foreign or international tribunal."[4]

The fundamental point established in *In re Guo* as to determining whether a proceeding is before a "foreign or international tribunal" is the directive that courts in the Circuit must look to a number of factors to evaluate whether a proceeding is a qualifying tribunal. Because of the Fund's misguided position that *In re Guo* somehow applies only to a select subset of Section 1782 applications, the Fund did not address key holdings from that decision. The Fund therefore fails to rebut Respondents' arguments that as a matter of law:

- whether a proceeding is before a "foreign or international tribunal" under Section 1782 "'does not turn on the governmental or nongovernmental origins'" of the proceeding (Brief at 5 (quoting *In re Guo*, slip op. at 21));

- "'no single factor clearly distinguishes a private international commercial arbitration from a state-sponsored one'" (*Id.* (quoting *In re Guo*, slip op. at 21)); and

- "*In re Guo* does not create a bright-line rule that all arbitrations against a country are subject to 1782," and that "the Arbitration's *ad hoc* panel applies UNCITRAL rules does not make the Arbitration a proceeding before a 'foreign or international tribunal' under the *In re Guo test*." (*Id*. at 7.) In fact, "[c]ourts have found arbitrations

---

[4]   Further, the Fund's claim that the parties in *In re Guo* "agree[d] that a bilateral investment treaty arbitration would quali[f]y as a proceeding before a 'foreign or international tribunal' under Section 1782" (Opp. at 4 (modifications in original)) is both irrelevant and incorrect.  The Appellant in *In re Guo* argued that the Appellees there had conceded that an arbitration pursuant to a bilateral investment treaty would be subject to Section 1782. (Opp. Ex. 1 [ECF No. 31-1] at 13-14.)  But the Appellees conceded no such thing.  Rather, the Appellees distinguished a recent Second Circuit case on Section 1782, *In re Application of Antonio del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ("*In re del Valle Ruiz*"), noting that the case concerned a bilateral investment treaty arbitration, but the parties there "did not dispute that the various proceedings were for use before 'tribunals' under § 1782(a) . . . and [the Second Circuit] did not address the meaning of tribunal in § 1782(a)."  (Opp. Ex. 2 [ECF No. 31-2] at 10-11.)

5

involving countries to be private" including ones adopting UNCITRAL rules (*Id.* (citing *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 32-33 (5th Cir. 2009); *Biedermann*, 168 F.3d at 881 (5th Cir. 1999)).

The Fund instead reiterates the factors identified in the Order to support that the Arbitration is before a "foreign or international tribunal" (Opp. at 4), but those factors give primacy to the supposed governmental origins of the Arbitration. That approach, as Respondents' Brief argued (and the Fund again fails to rebut), is inconsistent with the above holdings and principles of *In re Guo*. (Brief at 6.)

The Fund likewise fails to rebut Respondents' argument that the application of the factors identified in *In re Guo* support that the Arbitration is more akin to a private international commercial arbitration than a public one, including that: (i) the "arbitration panel lacks any affiliation with Lithuania, Russia, or any other governmental or intergovernmental entity" (*id.* at 9-11); (ii) the "arbitration panel is functionally independent from any governmental entity and its decision will be final and binding" (*id*. at 11); and (iii) the "nature of the panel's jurisdiction is similar to other private arbitrations." (*Id.* at 12–14.)

### 2. The Fund's few substantive arguments do not alter that the Arbitration is more akin to a private international commercial arbitration.

The Fund's other arguments are easily addressed. *First*, the Fund notes that the "Second Circuit did observe that, unlike a private commercial arbitration, 'state-affiliated tribunals often possess some degree of government-backed jurisdiction that one party may invoke even absent the other's consent." (Opp. at 5 (quoting *In re Guo*, slip op. at 22).) This argument is misleading. As noted in Respondents' Motion, while the relevant Agreement "provides for Lithuania's and Russia's prospective consent to arbitration (or some other dispute proceeding) against them" it does not provide for Lithuania's (or Russia's) prospective consent on anything else. (Brief at 13.) The structure of the arbitral panel, including the number of arbitrators and

6

the selection and appointment of those arbitrator, all require Lithuania's affirmative consent. The necessity of Lithuania's consent, and its involvement in these decisions, are all characteristics more akin to a private international commercial arbitration.

*Second*, the Fund attempts to rely on *In re del Valle Ruiz* to argue that the Second Circuit tacitly concluded that bilateral investment treaty arbitrations are proceedings before "foreign or international tribunals" by affirming the grant of a Section 1782 application. (Opp. at 5.) The Second Circuit did no such thing. It did not address whether an arbitration pursuant to a bilateral investment treaty is subject to Section 1782, because that case involved two foreign court proceedings (in addition to an international arbitration) and the respondents conceded that the "foreign or international tribunal" element was satisfied. *In re del Valle Ruiz*, 342 F. Supp. 3d 448, 452, 459 (S.D.N.Y. 2018), *aff'd*, 939 F.3d 520 (2d Cir. 2019) ("[A]t oral argument, Santander conceded…that Petitioners have established…that the discovery sought is for use in a proceeding before a foreign tribunal.") Further, the *In re del Valle Ruiz* court affirmed the **denial** of the Section 1782 application in connection with the international arbitration, but affirmed the grant of Section 1782 discovery with respect to the application of the "PIMCO Petitioners" in aid of the Spanish criminal court proceedings. 939 F.3d at 533-34.

## II.  A STAY IS WARRANTED.

*First*, as demonstrated above, and in Respondents' Brief, the Motion is not "frivolous." Respondents have a substantial probability of success on the merits as *In re Guo* constitutes an intervening change of controlling law, and ignoring its binding holdings of law would amount to clear error and work a manifest injustice to Respondents. *See Kolel.*, 729 F.3d at 108; *Shrader*, 70 F.3d at 257. The Fund's sole citation in support of its argument about frivolousness is to *Sutherland v. Ernst &Young LLP*, but even that case "conclude[d] that the optimal resolution here **is to stay discovery**." 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012) (emphasis added).

7

*Second*, the risk of prejudice to the Respondents is great.  If the Fund is indeed a stranger to the alleged dispute between Lithuania and Bank Snoras' investors, then it may disclose sensitive, confidential information protected by Lithuania bank secrecy law, to someone who has no business or right to obtain it.  The Fund does not deny that the documents it seeks to obtain are protected from disclosure under Lithuanian law.  (Notice of Arbitration [ECF No. 3-1] ¶ 38 (admitting that "Mr. Freakley's report is **not publicly available** and has been **classified as a State secret** by the Lithuanian special services.") (emphasis added).)  Moreover, the cases cited by the Fund regarding harm are distinguishable or taken out of context.  In *In re Platinum Partners Value Arbitrage Fund L.P.*, an auditor moved for a stay pending appeal of an order of the bankruptcy court requiring its compliance with a subpoena in a Chapter 15 bankruptcy proceeding.  No. 18-CV-5176 (DLC), 2018 U.S. Dist. LEXIS 109684, at *2 (S.D.N.Y. June 29, 2018).  Unlike here, the auditor's work papers in *In re Platinum* were not subject to any bank secrecy law, nor were they alleged by the movant to be in any way sensitive or confidential.  *Id.* at *17.  Similarly, *In re Gushlak* did not involve an allegation that irreparable injury would occur because the discovery materials in the underlying divorce proceeding were sensitive or confidential.  *See* No. 11-MC-0218 (NGG) (JO), 2012 U.S. Dist. LEXIS 60349, at *21 (E.D.N.Y. Jan. 30, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 60342 (E.D.N.Y. Apr. 30, 2012).  Finally, *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009), also cited by the Fund, was an anti-trust case that involved neither a stay nor Section 1782.

*Third*, contrary to the Fund's claim, a stay will not "significantly prejudice the Fund." (Opp. at 7.)  Despite the Fund's characterization of a stay as a "delaying tactic" (*id.*), the "Updated Procedural Calendar" provided by the Fund highlights that the Arbitration will spend

8

the *next year* focused on the question of its jurisdiction alone, specifically, whether the Fund has been validly assigned the claims at issue. (Opp. Ex. 3 [ECF No. 31-3].) In other words, the Arbitration schedule shows that even discovery on "jurisdiction and admissibility" is not occurring for months, and thus any **merits discovery** is a very long way away, and not until after the hearing on jurisdiction and admissibility scheduled for June 2021. (ECF No. 31-3 at 3.) The possibility that Respondents might be compelled to divulge sensitive, confidential, state secret information to entities that could ultimately be a stranger to the underlying dispute is extremely troubling.

*Fourth*, the public interest clearly weighs in favor of a stay because of the implications this case may have for others conducting fishing expeditions of entities like Respondents, who, by dent of their professional services, are repositories of extremely sensitive, confidential, commercial information.

## CONCLUSION

For the foregoing reasons, and those set forth in Respondents' Brief, Respondents respectfully request that this Court stay the July 8, 2020 Order pending resolution of this Motion, grant reconsideration of the Order, and deny the Application in its entirety upon reconsideration.[5]

---

[5] Out of an abundance of caution, Respondents filed a Notice of Appeal on August 7, 2020 [ECF No. 30]. Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), that notice will not "become[] effective" until this Court rules on the Motion. Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered"); Fed. R. App. P. 4(a)(4)(A) (listing motions to "to alter or amend the judgment under Rule 59" and "for relief under Rule 60"). If on reconsideration this Court denies the Application based on the recent Second Circuit decision *In re Guo*, then Respondents' appeal will become unnecessary.

Dated: New York, New York
August 12, 2020

**WILLKIE FARR & GALLAGHER LLP**

<u>/s/ Joseph T. Baio</u>
Joseph T. Baio
Stuart R. Lombardi
Jordan C. Wall
Samantha G. Prince
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
jbaio@willkie.com
slombardi@willkie.com
jwall@willkie.com
sprince@willkie.com

*Attorneys for Respondents AlixPartners LLP and Mr. Simon Freakley*

## Certification

I, Jordan C. Wall, attorney for Respondents AlixPartners LLP and Mr. Simon Freakley, hereby certify that this brief is in compliance with Your Honor's Individual Rules of Practice. The typeface is Times New Roman and the font of the main body of the brief is in 12 point, and double-spaced.


Dated:  August 12, 2020