UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re the Application of the Fund for Protection of Investor Rights in Foreign States pursuant to 28 U.S.C. § 1782 for an Order Granting Leave to Obtain Discovery for Use in a Foreign Proceeding.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/25/2020_

19 Misc. 401 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On July 8, 2020, the Court entered an order (the "July Order") granting an application under 28 U.S.C. § 1782 seeking leave to obtain discovery to be used in an international arbitration proceeding, brought by Applicant, The Fund for Protection of Investor Rights in Foreign States, a corporation organized under Russian law. July Order, ECF No. 27.

Applicant sought discovery for use in a proceeding (the "Arbitration") before an arbitral tribunal (the "Tribunal") constituted under a treaty titled the Agreement Between the Government of the Russian Federation and the Government of the Republic of Lithuania on the Promotion and Reciprocal Protection of the Investments (the "Treaty"). Notice of Arbitration ¶ 2, ECF No. 3-1. The Treaty provides that when an investor has a dispute with a state that is a party to the Treaty, the investor may (after following required procedures) bring the dispute before "an ad hoc arbitration in accordance with Arbitration Rules of the United Nations Commission on International Trade Law" ("UNCITRAL"). *Id.* ¶ 63. The targets of Applicant's discovery requests, Simon Freakley and AlixPartners, LLP, opposed the application. ECF No. 18. On July 22, 2020, Freakley and AlixPartners filed a motion for reconsideration of the July Order. ECF No. 28.

For the reasons below, the motion for reconsideration is DENIED.[1]

**DISCUSSION**

I.  Jurisdiction

On August 7, 2020, Freakley and AlixPartners filed a notice of appeal of the July Order. ECF No. 33. "[T]he filing of a notice of appeal typically 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Leeber Realty LLC v. Trustco Bank*, 798 F. App'x 682, 687 (2d Cir. 2019) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). However, "if a notice of appeal is filed *after* a motion for reconsideration, the district court retains jurisdiction over the motion for reconsideration." *Rich v. Associated Brands, Inc.*, No. 08 Civ. 666S, 2009 WL 236055, at *1 (W.D.N.Y. Jan. 30, 2009); *see also, e.g.*, *United States v. Bohannon*, 247 F. Supp. 3d 189, 193 (D. Conn. 2017) ("[T]he pendency of an

---

[1] Freakley and AlixPartners also seek a stay of the July Order pending resolution of the motion for reconsideration. Because this order denies the motion for reconsideration, that request is moot.

appeal does not divest a district court of jurisdiction over [a] motion for reconsideration." (internal quotation marks and citation omitted)); *United States v. Erskine*, No. 05 Cr. 1234, 2014 WL 12862427, at *1 (S.D.N.Y. Apr. 24, 2014) ("As [the defendant] filed his motion for reconsideration before he filed his notice of appeal, however, I retain jurisdiction over [the] motion for reconsideration.").

Accordingly, the Court concludes it has jurisdiction to decide Freakley and AlixPartner's motion.

II.  Legal Standard

Motions for reconsideration are governed by Rule 59 of the Federal Rules of Civil Procedure and Local Civil Rule 6.3, and are entrusted to the "sound discretion" of the district court. *Davidson v. Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (internal quotation marks and citation omitted). A court may grant a motion for reconsideration "to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal quotation marks and citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

To that end, a party "may not use a motion under Rule 6.3 to advance new facts, issues or arguments not previously presented to the court." *McGee v. Dunn*, 940 F. Supp. 2d 93, 100 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." (internal quotation marks and citation omitted)). The burden rests with the party seeking reconsideration to "demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Davis v. Gap, Inc.*, 186 F.R.D. 322, 324 (S.D.N.Y. 1999).

III.  Analysis

Freakley and AlixPartners argue that the July Order should be reconsidered in light of the Second Circuit's holding in *In re Guo*, 965 F.3d 96 (2d Cir. 2020), an opinion issued on the same day as the July Order. Reconsideration Mem. at 5, ECF No. 29. In *Guo*, the Second Circuit held that § 1782(a) does not extend to private international commercial arbitrations, reaffirming its prior holding in *National Broadcasting Co. v. Bear Stearns & Co.*, 165 F.3d 184 (2d Cir. 1999) ("*NBC*"). 965 F.3d at 106–07. The Second Circuit also provided guidance as to the factors that determine whether an arbitral proceeding constitutes a "foreign or international tribunal" for purposes of § 1782, holding that courts should look to "the degree of state affiliation and functional independence possessed by the entity, as well as the degree to which the parties' contract controls the panel's jurisdiction," and that ultimately "the inquiry is whether the body in

question possesses the functional attributes most commonly associated with private arbitration." *Id.* at 107.

Freakley and AlixPartners argue that the July Order cannot stand in light of *Guo* because the July Order focused on the Arbitration's origins in governmental action, rather than its current governmental status. Reconsideration Mem. at 6. Freakley and AlixPartners further argue that application of the *Guo* factors to the Arbitration would indicate that it was a private arbitration. *Id.* at 8.

Contrary to Freakley and AlixPartner's contentions, *Guo* suggests that arbitrations conducted pursuant to a bilateral investment treaty like the Treaty do qualify as "foreign or international tribunals" under § 1782. The applicant in *Guo* argued that the arbitral body at issue was not a typical private arbitration, but instead "most closely resemble[d] arbitration under bilateral investment treaties." *Guo*, 965 F.3d at 108 n.7. The Second Circuit rejected that argument, explaining:

> While an arbitral body under a bilateral investment treaty may be a "foreign or international tribunal," the arbitration here derives adjudicatory authority solely from the parties' agreement, rather than the intervention or license of any government to adjudicate cases arising from certain varieties of foreign investment. Additionally, the dispute here is between two private parties, while arbitration under bilateral investment treaties is typically between a private party and a state.

*Id.*; *see also id.* at 108 ("To be sure, [the ability of the parties to select their own arbitrators] is not determinative, as agreements between countries to arbitrate disputes between their citizens may involve selection of the arbitrators by the parties, and such a tribunal may be a 'foreign or international tribunal' notwithstanding this fact.").

Freakley and AlixPartners point to *Guo*'s enumeration of the particular characteristics of the arbitral body at issue in that case that indicated it was a private arbitration, and assert that the Tribunal shares many of them. Reconsideration Mem. at 9–14; *see Guo*, 965 F.3d at 107–08 (considering "the extent to which the arbitral body is internally directed and governed by a foreign state or intergovernmental body," "the degree to which a state possesses the authority to intervene to alter the outcome of an arbitration after the panel has rendered a decision," whether the "panel derives its jurisdiction exclusively from the agreement of the parties and has no jurisdiction except by the parties' consent," and "the ability of the parties to select their own arbitrators"). They presented arguments based on those same factors in their opposition to Applicant's motion, largely relying on the district court opinion affirmed in *Guo*. Opp. at 10–12, ECF No. 18. The Court nonetheless held that the Arbitration was taking place before a "foreign or international tribunal" within the meaning of § 1782 in light of the role of bilateral investment arbitration as a tool of international relations, the fact that the Tribunal derives its jurisdiction from the Treaty, and the fact that the Arbitration is a means by which Applicants are bringing claims against the Republic of Lithuania in its capacity as a state. July Order at 4–5 & n.1.

3

Those factors indicate that the Tribunal does not "possess[] the functional attributes most commonly associated with private arbitration." *Guo*, 965 F.3d at 107. Thus, nothing in *Guo* requires the Court to disturb its previous conclusion.

## CONCLUSION

Accordingly, Freakley and AlixPartner's motion for reconsideration is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 28.

SO ORDERED.

Dated: August 25, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge

4